In re Nita B. SMITH, Debtor.

Nita B. SMITH, Plaintiff/Appellant,

v.

FIRST OF AMERICA BANK—MICHI-GAN, N.A., Defendant/Appellee.

Nos. NK 86 02555, K87–115CA9.

United States District Court,
W.D. Michigan.

April 26, 1988.

Edward Read Barton, P.C., by Edward Read Barton, Allegan, Mich., for plaintiff/appellant.

Stephen L. Langeland, Kalamazoo, Mich., for defendant/appellee.

OPINION

ENSLEN, District Judge.

On September 4, 1986, defendant/appellee First of America Bank—Michigan, N.A.

("First of America" or defendant) repossessed a 1982 Buick Regal automobile which it had financed for plaintiff/appellant Nita B. Smith ("plaintiff" or "the debtor") on an installment sales contract. On that same day notice was given to plaintiff that the vehicle would be sold on Friday, September 19, 1986, at 10:00 a.m. unless the collateral was redeemed by that time. (*See* Transcript of November 14, 1986 hearing, hereinafter "Tr.–1" at 8–9, 31–32; *see also* Exhibit "A"). On September 15, 1986, plaintiff filed a petition for relief under Chapter 13 of the United States Bankruptcy Code at the Bankruptcy Court Clerk's Office, Grand Rapids, Michigan. Plaintiff's attorney also obtained a restraining order at that time. On September 17, 1986, plaintiff's attorney served a copy of the Chapter 13 restraining order upon First of America and its agent Michigan Creditor Services ("MCS") by mailing a copy to each by first class mail. Apparently no other notice of the filing was given to First of America or MCS.

MCS sold the plaintiff's vehicle to a third party on September 19, 1986 at 10:00 a.m. (*see* Tr.–1 at 33). MCS did not receive notice of the filing of the Chapter 13 or the restraining order until sometime between 11:30 a.m. and 1:00 p.m. on September 19, 1986. (Tr.–1 at 33). Moreover, First of America did not receive notice of the filing of the Chapter 13 or the entry of the restraining order until September 22, 1986. (Tr.–1 at 23).

On September 16, 1986, the plaintiff filed a motion that First of America return the vehicle to the plaintiff. The plaintiff's motion was heard by the bankruptcy court on November 14, 1986. Both parties offered testimony and exhibits and, after making findings of fact, the bankruptcy court denied plaintiff's motion. The bankruptcy court then entered a written order denying the plaintiff's motion on January 9, 1987. On January 12, 1987, plaintiff's attorney filed a motion for rehearing. That motion was heard on February 6, 1987. The bankruptcy court denied plaintiff's motion for rehearing and entered an order to that effect on February 12, 1987.

The major issue presently before this Court is whether the bankruptcy court properly held that the sale of the debtor's vehicle after the entry of the order for relief was not void.

### Discussion

■ The scope of the automatic stay provisions of the Bankruptcy Code, (*see* 11 U.S.C. § 362 (1978)), is broad and applies to formal and informal proceedings against the debtor. 2 Collier on Bankruptcy p. 362.04 at 362–27. Any action taken in violation of the automatic stay is void. *Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *In re Smith Corset Shops, Inc.*, 696 F.2d 971 (1st Cir.1982).

Plaintiff, in essence, argues that this general rule is "absolute." Defendant argues that while the general rule is that actions taken in violation of the automatic stay are void even where there has been no actual notice of the existence of the stay, "where the actions are taken in good faith and with no knowledge of the bankruptcy filing, under certain limited circumstances where equity so requires, courts may find that a good faith violation of the automatic stay is not void." Defendant's Brief at 4–5.

Plaintiff derives its equitable exception argument in the main from *Smith Corset, supra. Cf. also Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir.1984) ("A bankruptcy court, as a court of equity, nevertheless must be guided by equitable principles in exercising its jurisdiction."). *Accord In re Northwest Beverage, Inc.*, 46 B.R. 631 (Bankr.N.D.Ill.1985).

In *Smith Corset*, a tenant defaulted on the lease covering its business premises. The landlord obtained a state court eviction order and took possession of the debtor's inventory. The landlord was unaware that the debtor had filed a Chapter 11 petition prior to the eviction order. The creditors, acting under the court order, had the debtors' goods removed to a warehouse. Tenant/debtor had made no effort to inform the landlord of its petition prior to the removal of the inventory. The debtor/tenant then brought suit in bankruptcy court

charging the landlord with conversion of the inventory in violation of the automatic stay. The bankruptcy court ruled that in the absence of any knowledge or notice of the debtor's petition, the removal of inventory had not violated the automatic stay. The bankruptcy appellate panel reversed.

On appeal, the debtor argued that the removing of the inventory constituted a conversion because the state execution order authorizing such action was automatically invalidated pursuant to 11 U.S.C. § 362 by the earlier filing of the bankruptcy petition. The First Circuit reinstated the bankruptcy court's decision in favor of the creditors based on equitable principles *and* the behavior of the debtor. The First Circuit noted that:

> Under Section 362 of the bankruptcy code, the filing of a bankruptcy petition serves as an automatic stay of most actions against the debtor including eviction actions. *In Re Butler*, 14 Bankr. 532 (Bankr.S.D.N.Y.1981). Ordinarily, orders issued in violation of the stay are void. *Kalb v. Feuerstein*, 308 U.S. 433 [60 S.Ct. 343, 84 L.Ed. 370] (1940). Nevertheless, equitable and due process considerations apply in the exercise of bankruptcy jurisdiction. In *Bank of Marin v. England*, 385 U.S. 99 [87 S.Ct. 274, 17 L.Ed.2d 197] (1966), the Supreme Court considered whether a bank acting without notice or actual knowledge of a depositor's bankruptcy could be liable for honoring the bankrupt's check. The bankruptcy act at that time provided that upon the filing of a bankruptcy petition, title to the bankrupt's property automatically turned over to the trustee. Section 70 Bankruptcy Act, 52 Stat. 879 (1938) (superseded by 11 U.S.C. Section 542). Nonetheless, the Court suggested due process issues might be implicated if the bank were held liable, 385 U.S. at 102 [87 S.Ct. at 277], citing *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306 [70 S.Ct. 652, 94 L.Ed. 865] (1950), and stating "[t]here is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." 385 U.S. at 103 [87 S.Ct. at 277]. Accordingly, the Court carved an exception to

the Act's turnover requirements and freed the bank from liability. Congress apparently approved of the result and codified the principle in Section 542(c) of the new bankruptcy code. S.Rep. No. 989, 95th Cong., 2d Sess. 84, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5879. That section provides in part that

> an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debt may transfer property of the estate, or pay a debt owing to the debtor, in good faith ... to any entity other than the trustee, with the same effect ... as if the case under this title concerning the debtor had not been commenced.

*In Re: Smith Corset Shops, Inc.*, 696 F.2d at 976.

■ Defendant argues that the equities present in *Smith Corset* are similar to those at play in the case before me. It is clear that First of America and MCS had no notice or actual knowledge of the filing of debtor's Chapter 13 petition prior to the repossession sale. The first notice came a few hours after the sale. At that time it was apparently too late to recover the vehicle. (Tr.–1 at 32, 37). Further, First of America had notified the debtor fifteen days prior to the sale of the sale date, time, and place (Tr.–1 at 8, 9). Although the debtor was fully aware of the actions that First of America intended to take, the bankruptcy petition was not filed until September 15, 1987. A restraining order was obtained on September 15, 1987 but that order was left with the bankruptcy court clerk and mailed back to the debtor's attorney. (Tr.–1 at 42–44). The debtor's attorney received it on September 17, 1987, and mailed it out by ordinary mail on the same day. The bankruptcy judge noted that the restraining order was not personally served although it is apparently customary to do so under these circumstances. There apparently was no other action taken by the debtor to notify First of America that the Chapter 13 petition had been filed.

MCS testified that they had an established program for dealing with situations where they repossess a vehicle and, thereafter, the owner files for bankruptcy. When MCS is informed by an attorney that a bankruptcy has been filed, it apparently does not proceed with the sale. (Tr.–1 at 30–31). Further, MCS testified that in the past the debtor's attorney, Mr. Barton, had himself telephoned to advise it that a bankruptcy had been filed. Once informed by Mr. Barton that a petition had been filed, MCS apparently had stopped the sales. (Tr.–1 at 35, 37). However, in this case, MCS received no instructions from Mr. Barton. The debtor, however, testified that she recalled talking to the defendant and advising someone at the bank that she was filing the bankruptcy, but she could not recall to whom she had talked, or precisely when she had talked to them. (Tr.–1 at 9–11). The debtor was uncertain whether her bankruptcy petition had already been filed at the time she spoke to someone at the bank. (Tr.–1 at 16–17).

First of America testified that it never received any type of notice from the debtor that she had filed bankruptcy prior to their receipt of the restraining order on September 22, 1986. (Tr.–1 at 24–25). MCS testified further that it never received any notice from the debtor or anyone else prior to its receipt of the notice on September 19, 1986. (Tr.–1 at 32–33).

The bankruptcy court made findings of fact that First of America had no knowledge of the filing of debtor's Chapter 13 when it acted. Factual determinations cannot be overturned by this Court unless it determines that those determinations are clearly erroneous. *See Martin v. Bank of Germantown*, 761 F.2d 1163, 1165 (6th Cir. 1985). I find that the bankruptcy court's finding that First of America had no knowledge of the debtor's filing is supported by the evidence.

Defendant also argues that another equitable factor to consider is the fact that title to the vehicle had already passed to a third party at the time that MCS received notice. Moreover, defendant argues that the efforts of MCS to reacquire title to the vehicle when it finally did receive actual notice of the bankruptcy filing demonstrates its good faith. Defendant also asserts that the third party, a bona fide purchaser for value of the vehicle, refused to reconvey the vehicle and that title had already been transferred to him.

■ The Court agrees with the bankruptcy court's general pronouncement that there must be some limitations placed on the effect of the automatic stay. (Tr.–1 at 50). *See also Smith Corset*, 696 F.2d at 977. Defendant also argues that the bankruptcy court's ruling is consistent with *Smith Corset* in light of the specific language of 11 U.S.C. § 542(c)[1] which pro-

1. Section 542(c) in pertinent part provides:
   an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith ... to any entity other than the trustee, with the same effect ... as if the case under this title concerning the debtor had not been commenced.
   *Smith Corset*, of course, noted that whether or not section 542(c) was "technically applicable, it ... [was] ... a powerful indication of congressional acceptance of the principle set out in *Bank of Marin*." *Smith Corset*, 696 F.2d at 977. Several commentators have questioned the use of *Marin* in *Smith Corset* itself. *See e.g.,* Dunham, *Postpetition Transfers in Bankruptcy*, 39 U. Miami Rev. 1 (1984). Dunham notes that because there was no finding in *Smith Corset* that the landlord should be able to keep the property, and because the original taking of the property was in violation of section 549(a)(1), the landlord had a duty, at the very least, to return

the property. The Court finds this analysis and conclusion persuasive.
   The bankruptcy court in the case *sub judice* found that the bank [apparently as a good faith "transferor"] not only had no duty to secure the return of the Buick from a bona fide purchaser for value, but also had no duty to return the proceeds from the repossession sale—even where the debtor sought to use the proceeds for replacement transportation. The debtor argued, to no avail, that if she were given the use of the proceeds for substitute transportation, the bank would have first lien on the replacement vehicle. (The bankruptcy court, again applying equitable principles, would apparently also protect the third-party purchaser in an action by the debtor. But it appears that that precise issue was not presented to the bankruptcy court and is not before this Court.) The Court finds that, in any event, section 542(c) clearly should not be read to protect postpetition *transferees* of estate property since section 542(c) protects, at

tects the *transfer* of property of the debtor by an entity that has neither actual notice nor actual knowledge of the commencement of the Chapter 13 case. The Court, however, does not believe that the facts of this case warrant the overriding of the "automatic" provisions of the so-called automatic stay.

The bankruptcy court characterized the major issue in this case as one of "timing." The Court believes that it is perhaps more accurate to say that the issue before the Court is whether or not the postpetition sale of the debtor's vehicle is void because of the automatic stay. It has been said that "[t]he Automatic Stay of Section 362 is effective upon the date of the filing of the Petition ... and *formal service of process is not required.* Actions taken in violation of the Stay are void and without effect. ..." 2 Collier on Bankruptcy, Section 362.11 (15th Ed.1984) (emphasis added). While it has long been held that formal service of process is not required (*cf. Mueller v. Nugent*, 184 U.S. 1, 22 S.Ct. 269, 46 L.Ed. 405 (1901)), the Court believes that to affirm the bankruptcy court's holding in *this* case under *these* facts, would be to take a precarious first step down a slippery slope leading towards the requiring of some sort of formal service of process and/or actual notice of the automatic stay. The Court is well aware of the equitable exception set forth in *Smith Corset*. However, to apply *Smith Corset* under these facts would result in suffocating the stay's intended policy of providing some "breathing space" for the debtor and would allow an *ad hoc* equitable exception to swallow a well-established legal rule.

The Court believes there were a number of facts present in *Smith Corset* which are not present here. In *Smith Corset*, the debtor not only had advance notice of the proposed action, but it also had an agent on hand while the property was moved. Moreover, the debtor made *no effort* to advise either the landlord, the court or the constable of the pending bankruptcy action until the property had already been moved and stored. Further, the debtor sought to

obtain a legal advantage through its apparently deliberate omissions. The First Circuit noted that if the debtor were successful in its conversion action, it would "extract from the innocent ... [landlord] ... the full original cost of an inventory which may have become unmarketable." *Smith Corset*, 696 F.2d at 977. In reaching its decision, the *Smith Corset* court emphasized that the stay is of paramount importance and must be given full effect. The court recognized, however, that the debtor should not be allowed to "remain stealthily silent when it *knew* that the goods were being moved pursuant to Court order and then turn around and successfully sue ... [the landlord] ... for the alleged conversion of the goods." *Id.* The court properly found that this behavior would be a "misuse of the automatic stay." *Id.*

The Court finds no such "stealthy" behavior here. Indeed, there is testimony that the debtor talked to someone at the bank concerning the bankruptcy. Moreover, the Court finds it significant that because the vehicle had already been sold to a bona fide purchaser at the time the bank became aware that a bankruptcy petition had been filed, that the debtor requested—as an alternative to seeking an action to force the bank to recover the vehicle—that the $3,000 in proceeds from the sale be used for replacement transportation. Upon a motion for reconsideration, the debtor argued that that sum was the value of the vehicle—at least as a repossessed vehicle—and that the bank could be given first lien.

*Smith Corset* noted the considerable equitable and due process considerations which underlie the refusal to apply contempt sanctions, the usual remedy for violation of the automatic stay, in cases where the defendant acted without notice or actual knowledge of the bankruptcy petition. Nevertheless, the *Smith Corset* court found equitable and due process considerations important even in the absence of a contempt hearing because of the "particular facts" before it and "because conversion, as ... [the debtor] ... envisions it, is

most, only those parties holding property at the time of the petition.

a strict liability tort that would shift the entire cost of the goods onto the ... [landlord]." *Smith Corset,* 696 F.2d at 977 n. 7.

In *Smith Corset,* the court found a "stealthy" attempt to sue a landlord for the alleged conversion of possibly "unmarketable" goods to be a misuse of the automatic stay. By contrast, in the case *sub judice* the debtor sought the use of property she needed to carry out the provisions of her plan. Although it may have been the "custom" to personally serve a restraining order, this Court, unlike the bankruptcy court, does not find that the failure of the debtor's attorney to personally serve the order requires that the protections of the automatic stay be suspended. On the other hand, the Court emphasizes that it finds nothing in *defendant's* behavior to indicate that it acted in bad faith or committed a willful violation of the automatic stay. Moreover, although the *debtor's* attorney's behavior was, at most, somewhat neglectful, it in no way was "improper" or "stealthy" within the meaning of *Smith Corset.* Nor is this a case where the debtor unreasoanbly and inexcusably delayed asserting its claim such that the creditor would be seriously prejudiced if the sale were voided. *See Matthews,* 739 F.2d at 251 (noting that suspension of automatic stay provisions may be appropriate under *Smith Corset* where the "equitable considerations weigh *heavily* in favor of the creditors and the debtor bears some responsibility for creating the problems.") (emphasis added). Under the facts of this case, the Court believes that it would be improper to recognize an exception to the general rule that a violation of a stay will be void even where there was no actual notice of the existence of the stay. The purpose of the automatic stay is, of course, to protect the debtor by immediately stopping efforts on behalf of creditors to collect assets and/or to take property of the estate. That important purpose is not promoted by the explicit or implicit requiring of personal service of process of the petition.

The Court notes that it must review the bankruptcy court's findings of facts under the clearly erroneous standard and its conclusions of law, *de novo. See Crocker*

*National Bank v. American Mariner Industries, Inc.,* 734 F.2d 426, 429 (9th Cir. 1984). The Court believes that the issue before it is best classified as a mixed question of law and fact. To the extent that the bankruptcy court's decision turned on a factual finding that the debtor's behavior was so unreasonable as to warrant an equitable exception similar to that invoked in *Smith Corset,* the Court holds that that finding is clearly erroneous. Moreover, under the facts of this case, the Court, after balancing the equities, finds that the sale which proceeded pursuant to a good faith violation of the automatic stay is void. The Court finds that this is especially so when, as here, the debtor seeks property for the proper purpose of carrying out the provisions of her plan.

As the preceding analysis should make clear, I also find that the bankruptcy court improperly denied the debtor's motion for reconsideration. The wherefore clause of the debtor's January 12, 1987 motion sought the use of $3,000 in proceeds for replacement transportation. The debtor emphasizes that the bankruptcy court itself confirmed at the initial hearing the right of the debtor to have property that she needed in carrying out the provisions of the plan. The debtor argued further that transportation was necessary for her to carry out her proposed plan. Finally, the debtor emphasizes that the January 12, 1987 motion was not a frivolous motion, and but for the "errors" in the findings of fact and conclusions of law in the original hearing, the motion itself would have been unnecessary.

Defendant argues that the bankruptcy court judge properly awarded sanctions based upon the debtor attorney's refusal to approve the appellee's attorney's drafted order denying the return of the vehicle. Defendant argues that because the debtor's attorney refused to approve the order, a motion had to be brought before the bankruptcy court for entry of the order. A hearing was held on that matter on January 9, 1987 at which time the defendant's attorney apparently advised the bankruptcy court that he had no real objection to the

entry of the order but merely did not wish to approve it. The bankruptcy court then entered the order on January 9, 1987.

It appears to the Court, upon reviewing the record, that the sanctions at issue here are those imposed as costs in connection with the debtor's bringing her motion for reconsideration. Those costs were allowed in an order dated February 12, 1987. The debtor argues that the motion was a good faith attempt to resolve the problem and that the court *never considered* the motion but rather imposed sanctions. However, the face of the order of February 13, 1987 denying debtor's motion for rehearing indicates that the debtor's request that the car proceeds be used by the debtor to obtain new transportation was also denied. Although it is not completely clear to what extent the costs sanction was imposed for the reasons stated by plaintiff and/or for the reasons asserted by defendant, the Court believes that the matter of sanctions should be left to the sound discretion of the bankruptcy judge. Under the facts of this case the Court does not find that there was an abuse of discretion in imposing sanctions. Finally, the Court, given its previous ruling, sees no need to address the debtor's assertion that the order confirming the debtor's Chapter 13 claim is res judicata as to the issue before this Court.

Accordingly, for all the reasons set forth above, I reverse the decision and order of the bankruptcy court denying the debtor's motion for return of possession of the 1982 Buick. I further reverse the bankruptcy court's order denying the debtor's motion to reconsider. In addition, the debtor's request for authorization to use the $3,000 to obtain replacement transportation is granted. Debtor's request that this Court determine the bankruptcy court's order confirming the plan as a final binding order on all parties is also denied as moot. Finally, the debtor's request to strike sanctions is denied. An appropriate order will follow.