In re Raymond B. GARCIA, and Carol Garcia, Individually, and d/b/a R.C. Tire Company, Debtors.

Raymond B. GARCIA, and Carol Garcia, Individually, and d/b/a R.C. Tire Company, Debtors–Appellees,

v.

PHOENIX BOND & INDEMNITY COMPANY, and DeBois–Investment Group, Inc., Petitioners–Appellants.

No. 88 C 10407.

United States District Court, N.D. Illinois, E.D.

Dec. 1, 1989.

Nunc Pro Tunc Dec. 7, 1989.

**336**

Cohen & Cohen, Stanford D. Marks, Chicago, Ill., for petitioners-appellants.

United States Attorney, Asst. U.S. Atty. Michael S. O'Connell.

Ronald F. Grossman, Grossman, Mitzenmache & Schecter, Chicago, Ill., for debtors-appellees.

## AMENDED ORDER

NORGLE, District Judge.

Phoenix Bond & Indemnity Company ("Phoenix") and DeBois Investment Group, Inc. ("DeBois"), collectively the appellants, appealed from an order of the United States Bankruptcy Court for the Northern District of Illinois, Judge Ronald Barliant presiding, dated October 28, 1988, denying their complaint for turnover of certain property and holding that the post-petition tax sale of that property was void *ab initio* and that the order for issuance of a tax deed was void, as both proceedings were in violation of the automatic stay imposed by 11 U.S.C. § 362(a). On September 28, 1989 this court issued a minute order affirming the order of the Bankruptcy Court and indicating that a draft order was to follow.

## FACTS

On March 31, 1981, Raymond B. Garcia and Carol A. Garcia, individually and d/b/a R.C. Tire Company (the "Debtors"), filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code. 11 U.S.C. § 101 et seq. On August 31, 1982, the Debtors filed their schedule B-1 indicating that they claimed an interest in property located at 559 East 162nd Street, South Holland, Illinois (the "Realty"). The Debtors also listed the County Collector of Cook County on schedule on A-1 as a creditor-claimant for pre-petition real estate taxes owed on the Realty. Creditor-claimants listed on Schedule A-1 receive notice of the bankruptcy filing and the automatic stay. Bankruptcy Rule 2002(f).

On December 18, 1985, the Cook County Collector, despite having notice of the bankruptcy, held a public sale for delinquent real estate taxes owed on the Realty for 1984, and prior years. The delinquent taxes were purchased by Phoenix, which had no actual knowledge of the debtors' pending bankruptcy case, and the certificate of that sale subsequently assigned to DeBois.

The County Clerk of Cook County notified the Debtors of the tax sale and the anticipated expiration date of a statutory period of redemption. On May 9, 1988, DeBois filed a petition for tax deed in the Circuit Court of Cook County, Illinois. A statutory notice of the pendency of the tax deed petition and expiration of the period of redemption was served on the Debtors and all persons interested in the Realty. No redemption was made, and an order was entered on May 9, 1988 directing the Cook County Clerk to issue a tax deed to Debois.

On June 23, 1988, DeBois petitioned the Bankruptcy Court for an order of turnover, pursuant to 11 U.S.C. § 543. Walter Konecny and Francis A. Konecny, holders of a trust deed to the Realty, objected to DeBois' petition for an order of turnover, claiming that the post-petition sale for delinquent real estate taxes was void *ab initio*. On July 26, 1988, David Herzog, the trustee (the case was converted on April 25, 1988, from a Chapter 11 to a Chapter 7), responded to DeBois' petition, asserting essentially the same objection as did the Konecnys, and also, exercising the trustee's avoiding powers, requested the Court to

declare the tax sale and the issuance, if any, of a tax deed to be null and void and of no effect.[1] The Bankruptcy Court, Judge Ronald Barliant presiding, issued an order denying DeBois' petition and holding that the post-petition sale was void *ab initio*. Appellants then filed a timely notice of appeal of that order.

## DISCUSSION

Under 11 U.S.C. § 362(a)[2], the filing of the Debtors' Chapter 11 petition invoked an automatic stay of, among other actions, any act to enforce any lien securing a pre-petition claim against property of the bankruptcy estate, including the Realty. *See* 11 U.S.C. § 541(a). This automatic stay prevents creditors from dismembering the bankruptcy estate.[3] Consequently, it is essential to the accomplishment of the alter-nate purposes—reorganization or orderly liquidation—of the Bankruptcy Code. Although § 362(d) details the procedure for lifting the automatic stay, this avenue was never pursued. Therefore, the Cook County Collectors' post-petition sale of the Realty for pre-petition taxes was an act in violation of the automatic stay.[4]

Though acknowledging that the tax sale violated the automatic stay, the appellants argue that the Bankruptcy Court erred in concluding that acts in violation of the automatic stay are void. Rather, appellants contend that acts in violation of the automatic stay are merely voidable, provided they are avoided within the time period provided in § 549(d), which governs the avoidance of post-petition transactions not otherwise authorized by the Bankruptcy Code or court order.[5] § 549(d)'s time

---

1. As no notice of the pendency of the petition for a tax deed was served upon the trustee in bankruptcy, he was thus not aware of any rights of redemption, nor aware of the proceedings for a tax deed until DeBois' petition for a turnover order.

2. § 362. Automatic stay

    (a) Except a provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of-

    (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

    (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

    (3) any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate;

    (4) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

    (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

    (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

    (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

    (8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

3. The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy. 1978 U.S.Code Cong. & Admin.News 6296–97.

4. It is not necessary to this holding to determine whether the sale was of the Realty or of the taxes—the nature of the interest transferred, or whether it was property of the estate and the transfer occurred at the time of the tax sale. *Compare City of Chicago v. City Realty Exchange, Inc.*, 127 Ill.App.2d 185, 262 N.E.2d 230 (1st Dist.1970) with *Wiebrecht v. City of Chicago*, 14 Ill.App.3d 1062, 304 N.E.2d 9 (1st Dist.1973) for effect of tax sale under Illinois law. The crucial determination is that the tax sale violated stay. The stay prohibits numerous specific actions, not all of which amount to transfers of property of the estate.

5. § 549. Postpetition transactions

    (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

.. 

period had expired in this case. In their view, concluding that acts in violation of the automatic stay are void not only renders § 549(d) a nullity, but also is inconsistent with § 362(d)'s provision for annulment of the stay, since a void act cannot be ratified.

There is authority for appellants' position.[6] Yet, it is insufficient, either in numbers or force of logic, to overcome the great weight of authority, both in this district[7] and elsewhere,[8] that acts in violation of the automatic stay, and specifically post-petition tax sales, are void and not merely voidable. The court cannot agree with appellants' view that, even where the issue of the distinction between "void" and "voidable" was not urged, these courts did not understand the meaning of the term "void" and the import of its use.

Appellants argument that the language of § 549(d) mandates the conclusion that acts in violation of the automatic stay are merely voidable was addressed by a number of the courts holding that acts in violation of the stay are void *ab initio*. Their solution was that § 549(d) was inapplicable to an action to avoid a post-petition tax sale

(1) that occurs after the commencement of the case; and
(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
(B) that is not authorized under this title or by the court.

.    .    .    .    .

(d) An action or proceeding under this section may not be commenced after the earlier of—
(1) two years after the date of the transfer sought to be avoided; or
(2) the time the case is closed or dismissed.

**6.** See *In re Sports & Science Ind. Inc.*, 95 B.R. 745, 747 (Bankr.C.D.Cal.1989); *In re Sapp*, 91 B.R. 520, 522 (Bankr.E.D.Mo.1988); *In re Haugen Const. Service, Inc.*, 88 B.R. 222, 224–26 (Bankr.D.N.D.1988); *In re Clark*, 79 B.R. 723, 725 (Bankr.S.D.Ohio 1987); *In re Brooks*, 79 B.R. 479, 480 (Bankr.9th Cir.1987); *In re Fuel Oil Supply and Terminaling, Inc.*, 30 B.R. 360, 362 (Bankr.N.D.Tex.1983).

**7.** See *In re Richard*, 80 B.R. 451, 453 (N.D.Ill. 1987); *In re Young*, 14 B.R. 809, 811 (Bankr.N. D.Ill.1981).

**8.** See *In re Taylor*, 884 F.2d 478, 483 (9th Cir. 1989); *In re Shamblin*, 878 F.2d 324, 327 (9th

under § 362(a) because the tax sale is not a transfer of property of the estate, but of a claim against the estate. *See In re Shamblin*, 878 F.2d at 328; *In re Richard*, 80 B.R. at 454–55. The court is not altogether comfortable with this interpretation. While it reaches the correct result, it does so by use of a distinction which may run contrary to the broad definition of property of the estate, *see* 11 U.S.C. § 541, and may not be consistent as a matter of law from state to state. (*See* n. 4). More importantly, this solution fails to address the fundamental question, raised by appellants, of the interrelationship between § 362(a) and other Bankruptcy Code sections which cannot always be resolved by concluding that a post-petition transfer was not of property of the estate. Under this interpretation, actions alleging certain violations of the stay—those resulting in transfer of property of the estate—remain subject to § 549(d). However, there is an interpretation, which settles the question of § 362(a)'s interrelation with § 549 in a manner consistent the policies promoted by the Bankruptcy Code and which is applicable to all types of transactions. It is based

Cir.1989) (rejecting identical arguments made by same appellants); *In re Stringer II*, 847 F.2d 549, 551 (9th Cir.1988); *In re Ward*, 837 F.2d 124, 126 (3d Cir.1988); *Morgan Guar. Trust Co. v. American Sav. and Loan*, 804 F.2d 1487, 1490 (9th Cir.1986), *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 940 (6th Cir.1986); *In re Sambo's Rest., Inc.*, 754 F.2d 811, 816 (9th Cir. 1984); *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir.1984); *In re Smith Corset Shops, Inc.*, 696 F.2d 971, 976 (1st Cir.1982); *Borg–Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir.1982); *In re Smith*, 86 B.R. 92, 93 (W.D.Mich.1989); *In re Wingo*, 89 B.R. 54, 57 (Bankr.9th Cir.1988); *In re Ungar*, 104 B.R. 517, 520 (Bankr.N.D.Ga.1989); *In re Guterl Special Steel Corp.*, 95 B.R. 370, 373 (Bankr.W.D.Pa. 1989); *In re Schewe*, 94 B.R. 938, 946 (Bankr.W. D.Mich.1989); *In re Schroff*, 94 B.R. 279, 283 (Bankr.E.D.N.Y.1988); *In re Elrod*, 91 B.R. 187, 189 (Bankr, D.C.1988); *In re Lenz*, 90 B.R. 458, 459 (Bankr.D.Colo.1988); *In re Greer*, 89 B.R. 757, 759 (Bankr.S.D.Ill.1988); *In re Calender II*, 89 B.R. 280, 282 (Bank.D.C.1988); *In re Heiserman*, 78 B.R. 899, 904 (Bankr.C.D.Ill.1987); *In re Farms One, Inc.*, 73 B.R. 103, 107 (Bank.D. Colo.1987); *In re Clark*, 69 B.R. 885, 890 (Bankr. E.D.Pa.1987); *In re Organized Maintenance*, 47 B.R. 791, 793 (Bankr.E.D.N.Y.1985); *In re Eisenberg*, 7 B.R. 683, 686–87 (Bankr.E.D.N.Y.1980); Collier on Bankruptcy, ¶ 362.03 (15th ed. 1989).

upon both the distinction between actions *specially prohibited* by the automatic stay and actions not *otherwise authorized* by the Bankruptcy Code and the debtor's role in the transaction in question.

Holding that, absent specific statutory exception, *see, e.g.,* § 549(c), actions in violation of the automatic stay are void, rather than merely voidable, is not, as appellants contend, necessarily irreconcilable with § 549, which requires that actions by the trustee to avoid post-petition transactions be commenced the earlier of the time the bankruptcy case is closed or dismissed or two years after the transaction sought to be avoided. 11 U.S.C. § 549(d).[9] § 362(a) prevents creditors from dismembering the bankruptcy estate through actions which do not require the post-petition cooperation or consent of the debtor.[10] Concluding that § 549(d) does not limit the period in which a transfer may be challenged as in violation of § 362(a) does not render § 549(d) a nullity, but rather leaves an entire realm of post-petition transfers subject to the time limitations on avoidance contained in § 549(d). These are post-petition transfers in which the debtor is a willing participant, but which, though not prohibited by the automatic stay, are not otherwise authorized by the Bankruptcy Code.[11]

There is a distinction between actions in violation of the automatic stay and specifically prohibited and actions which are not otherwise expressly authorized by the Bankruptcy Code. All actions which are not authorized by the Bankruptcy Code are not in violation of the automatic stay defined in § 362(a). Targeted at the activities of creditors, the automatic stay itself does not specifically prohibit the debtor from willingly transferring an interest in property of the estate post-petition. Moreover, certain provisions of the Bankruptcy Code specifically authorize the trustee, and thus the debtor-in-possession, *see* 11 U.S.C. 1107, to do so in the ordinary course of business. *See* 363(c)(1). Thus, for example, where a debtor-in-possession transferred property of the estate, asserting that the transfer was in the ordinary course, § 549(d) would limit the time in which the trustee could avoid the transfer on the basis that it was outside the ordinary course of business.

This interpretation of § 549 is also supported by § 549(a)(2)(A)'s specific reference to the avoidance of transfers authorized under § 303(f) which allows a debtor, in an involuntary case, to continue to use, acquire or dispose of property of the estate until entry of an order for relief or court order. 11 U.S.C. § 303(f). Actions by the debtor pursuant to § 303(f) include post-petition transactions with the debtor's consent. Additionally, there is § 549's proximity in the Bankruptcy Code to provisions governing the avoidance of pre-petition transfers in which the debtor is ostensibly a willing participant. *See* 11 U.S.C. §§ 547, 548.

Thus, interpreting § 549(d) to limit actions based upon violation of § 362(a) is clearly not necessary to avoid rendering § 549(d) a nullity.

Moreover, that Congress saw fit to include specific exceptions to the automatic stay does not require the conclusion that actions in violation of the automatic stay are merely voidable. Rather, they are examples of the recognition that in certain circumstances significant interests promoted by nonbankruptcy law conflict with the

---

9. The time within which a pre-petition transfer may be avoided is governed by 11 U.S.C. § 546.

10. *See* n. 2. Yet, actions which violate the stay need not result in the immediate transfer of property of the estate.

11. The comments of Congress with respect to § 549 are illustrative: "This section modifies section 70d of current law [former section 110(d) of this title]. It permits the trustee to avoid transfers of property that occur after the commencement of the case. The transfer must either have been unauthorized, or authorized under a section that protects only the transferor. Subsection (b) protects "involuntary gap" transferees to the extent of any value (including services, but not including satisfaction of a debt that arose before the commencement of the case), given after commencement in exchange for the transfer. Notice or knowledge of the transferee is irrelevant in determining whether he is protected under this provision." Notes of Committee on the Judiciary, Senate Report No. 95–989, 1978 U.S.Code Cong. & Admin.News 5787.

purposes of the Bankruptcy Code and occasionally must be given precedence. *See* § 549(c). The presence of these express exceptions and the absence of any specific language indicating that acts in violation of the automatic stay are merely voidable, combined with the importance of the stay to the policies promoted by the Bankruptcy Code, in part, negates by implication appellants' interpretation. Similarly that a stay may be "annulled" does not indicate that its impact is to make violations merely voidable. Rather, annulling the stay simply affords retroactive relief. *See In re Albany Partners, Ltd.*, 749 F.2d at 675. An act which would be void is no longer so because circumstances are as if the stay had no longer issued as to the transaction.

Additionally, § 362(c)(2)'s provision that the automatic stay continues until the case is closed or dismissed is, from a policy perspective, contrary to an interpretation of § 549 as limiting the time in which a trustee may challenge a transfer as in violation of the automatic stay. This is because the two year limit under § 549(d) may expire prior to the time a case is closed or dismissed. In which instance, there would be the inconsistency of a policy that the stay remains in effect until the case closed, and a policy that violations of the stay could not be enforced after two years even though the case was still open. There is no reason to distinguish between violations of the automatic stay based upon their age.

Neither is the court convinced otherwise by the appellants' citation of decisions holding that § 362 does not stay the running of a mortgagor's period of redemption, in which a debtor's interest in property may expire through inaction, since the automatic stay prevents post-petition *actions* to dismember the estate. *See Goldberg v. Tynan*, 773 F.2d 177 (7th Cir.1985); *Johnson v. First National Bank of Monte Video, Minnesota*, 719 F.2d 270 (8th Cir.1984);

*In re Tabor Enterprises Inc.*, 65 B.R. 42 (N.D.Ohio 1986).

Finally, to the extent any inconsistency may exist between an interpretation of § 362(a) as making actions in violation of the automatic stay void and § 549, the court concludes that the fundamental importance of the automatic stay to the purposes sought to be accomplished by the Bankruptcy Code requires that acts in violation of the automatic stay be void, rather than voidable. Concluding that acts in violation of the automatic stay were merely voidable would have the effect of encouraging disrespect for the stay by increasing the possibility that violators of the automatic stay may profit from their disregard of the law, provided it goes undiscovered for a sufficient period of time. This may be an acceptable risk to some creditors when measured against a delayed prorata distribution.[12]

## CONCLUSION

Acts in violation of the automatic stay imposed by § 362(a) are void *ab initio*. § 549(d)'s restriction on the time period within which a trustee may avoid post-petition transfers does not apply to the trustee's challenge of actions specifically prohibited by § 362(a), but only to actions challenging post-petition transfers authorized only by §§ 303(f) or 542(c) or not otherwise authorized by the Bankruptcy Code or court order. Therefore, the order of the Bankruptcy Court is affirmed.

IT IS SO ORDERED.

---

12. Given the often poor state of records kept by debtors, it is not an impossibility that actions in violation of the automatic stay will not be uncovered until the time period provided in § 549 expires. Therefore, provided a sanction for willful violation can be avoided if the violation is discovered, a contrary ruling would encourage disregard for the stay. While this ruling may cause occasional questioning of title, this is preferable to significantly limiting the stay's effectiveness when the language of the Bankruptcy Code does not so require.