**In re GERMANSEN DECORATING, INC., Debtor.**

**Alexander S. KNOPFLER, not individually but solely as Trustee, Plaintiff,**

v.

**The GLIDDEN CO., et al., Defendants.**

**Bankruptcy No. 89 B 07273.**
**Adv. No. 92 A 00362.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Dec. 29, 1992.

Faye B. Feinstein, Altheimer & Gray, Chicago, IL, for Trustee.

Mitchell A. Orpett, Tribler & Orpett, Chicago, IL, for Sherwin–Williams.

## AMENDED MEMORANDUM, OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter is before the court on the motion of Sherwin–Williams Company for summary judgment brought under Fed. R.Civ.P. 56, made applicable to adversary proceedings in bankruptcy cases by Fed. R.Bankr.P. 7056, in connection with an adversary complaint brought by the trustee, Alexander S. Knopfler, against Sherwin–Williams. The Trustee's complaint seeks to avoid certain postpetition transfers of property of the estate by the Debtor, Germansen Decorating, Inc., while this case was in Chapter 11 and the Debtor was functioning as debtor-in-possession. For the reasons stated below, the court denies Sherwin–Williams' motion.

## FACTS

On May 1, 1989, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor was a subcontractor engaged in the painting and decorating of commercial property. Both before and after the Chapter 11 filing, Sherwin–Williams supplied materials for some of the construction projects in which the Debtor was involved.

Prior to filing bankruptcy, the Debtor fell behind on its account with Sherwin–Williams. The parties worked out a payment plan to pay off the past due account balance. Pursuant to the payment plan, the Debtor delivered post-dated checks to Sherwin–Williams. Sherwin–Williams contends that it took no action postpetition to collect from the Debtor, but that it merely received the post-dated checks.[1] The Trustee disputes this fact and contends that Sherwin–Williams exerted pressure on the Debtor to pay its prepetition debt to Sherwin–Williams postpetition by threatening to withhold deliveries of specially formulated supplies. In any case, between May 31, 1989, and July 31, 1989, the Debtor, acting as a Debtor–In–Possession and without court approval, paid Sherwin–Williams $39,124.88 on account of prepetition debt owed to Sherwin–Williams.

On August 24, 1990, this case was converted to a Chapter 7 case, and Alexander S. Knopfler was appointed as Trustee by the United States Trustee. On March 31, 1992, the Trustee filed the instant complaint seeking to recover from Sherwin–Williams the $39,124.88 in payments on prepetition invoices made to it by the Debtor between May 31, 1989 and July 31, 1989.

---

1. The post-dated checks presumably were not cashed until after the Debtor filed its bankruptcy petition, since all of the post-dated checks in question carried postpetition dates.

Of course, the transfers did not occur when the debtor delivered the post-dated checks to Sherwin–Williams. Instead, they occurred when the checks were honored by Sherwin–Williams' bank. *See Barnhill v. Johnson,* —— U.S. ——, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992) (for purposes of § 547(b), a transfer occurs when check is honored). Thus, all of the transfers complained of by the Trustee took place post-petition.

The complaint alleged that such payments were made in violation of the automatic stay imposed by Bankruptcy Code § 362(a) and thus that they were void and could be recovered by the Trustee for the benefit of the estate. Sherwin–Williams moved for summary judgment, claiming that the Trustee's action was time-barred and that, in any case, Sherwin–Williams took no action in violation of the stay.

## JURISDICTION AND PROCEDURE

The court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) as a matter arising under § 362 of the Bankruptcy Code. The matter is before this court pursuant to Local Rule 2.33 of the United States District Court for the Northern District of Illinois, automatically referring bankruptcy cases and proceedings to this court for hearing and determination. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(E) and (G).

## STANDARD FOR SUMMARY JUDGMENT

Under Fed.R.Civ.P. 56(c), made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). On a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). There is no genuine issue for trial if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## DISCUSSION

The Trustee seeks to recover $39,124.88 in postpetition payments made by the Debtor to Sherwin–Williams between May 31 and July 31 of 1989. Ordinarily, the Trustee would have sought to recover these unauthorized postpetition transfers of property of the estate under § 549.[2] However, any attempt by the trustee to recover the postpetition payments to Sherwin–Williams under § 549 is now clearly barred by § 549's two year statute of limitations.[3]

Thus, the Trustee has instead attempted to recover the payments made by the Debtor to Sherwin–Williams under § 362, not § 549, claiming that those payments were made in violation of the automatic stay. It is Sherwin–Williams' position that: (1) the Trustee's claim under § 362 is time-barred, since the § 549 statute of limitations applies to actions to recover postpetition transfers of property of the estate under § 362; and (2) in any case, Sherwin–Williams did not take any action in violation of the stay. Thus, Sherwin–Williams claims that summary judgment should be awarded in its favor on the Trustee's complaint.

I. Is the Trustee's complaint time-barred?

■ Sherwin–Williams takes the position that § 549's now-lapsed statute of limita-

---

**2.** Section 549(a) authorizes the trustee to "avoid a transfer of property of the estate—
(1) that occurs after the commencement of the case; and
(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
(B) that is not authorized under this title or by the court."

**3.** Section 549(d) limits the time in which an action under § 549 may be commenced to "the earlier of—

(1) two years after the date of the transfer sought to be avoided; or
(2) the time the case is closed or dismissed."
The transfers the trustee complains of here occurred between May and July of 1989, almost three years before the trustee filed this complaint. Note that the two year statute of limitations imposed by § 549(d) runs from the time of the transfer, not the date of the appointment of a trustee. *Compare* § 546(a).

tions prevents the Trustee from pursuing this action to recover unauthorized postpetition transfers of property of the estate under § 362. Predictably, the Trustee disagrees. The Trustee argues that the Trustee's right to recover a postpetition transfer made in violation of the § 362 stay is wholly independent of the Trustee's right to recover a postpetition transfer under § 549. Therefore, the Trustee claims, the time limitation of § 549(d) in no way limits the Trustee's ability to recover property transferred in violation of the stay under § 362. The court agrees with the Trustee.

In *In re Garcia*, 109 B.R. 335, 339–340 (N.D.Ill.1989), Judge Norgle specifically rejected the argument made by Sherwin–Williams in this case, holding that a transfer of property in violation of the automatic stay is void *ab initio*, and therefore, an action to recover that property is not constrained by § 549's statute of limitations. The court reasoned that applying the time limitation in § 549(d) to § 362 would be contrary to the policy behind § 362 in that:

§ 362(c)(2)'s provision that the automatic stay continues until the case is closed or dismissed is, from a policy perspective, contrary to an interpretation of § 549 as limiting the time in which a trustee may challenge a transfer as in violation of the automatic stay. This is because the two year limit under § 549(d) may expire prior to the time a case is closed or dismissed. In which instance, there would be the inconsistency of a policy that the stay remains in effect until the case closed, and a policy that violations of the stay could not be enforced after two years even though the case was still open. There is no reason to distinguish between violations of the automatic stay based upon their age.

*Garcia*, 109 B.R. at 340.

In *In re Schwartz*, 954 F.2d 569 (9th Cir.1992), the Ninth Circuit adopted the *Garcia* analysis, noting that:

a straightforward analysis of section 549 reveals that it is not intended to cover the same type of actions prohibited by the automatic stay nor rendered moot by section 362's voiding of all automatic stay violations. Section 549 applies to unauthorized transfers of estate property which are not otherwise prohibited by the Code. *Garcia*, 109 B.R. at 338–40; *In re R & L Cartage & Sons*, 118 B.R. 646, 650–51 (Bankr.N.D.Ind.1990) (adopting *Garcia* analysis). In most circumstances, section 549 applies to transfers in which the debtor is a willing participant. *See Garcia*, 109 B.R. at 339. For example, in a transfer unrelated to any antecedent debt, the debtor may sell a portion of the estate's property to a third person.

*Schwartz*, 954 F.2d at 573–74.

■ This court finds the reasoning of *Garcia* and *Schwartz* persuasive. The plain meaning of the language of § 549(d) only applies to actions to recover property brought under § 549. Nothing in § 549(d) remotely suggests that it also places a time limit on actions to recover property transferred in violation of the § 362 automatic stay. Any transfer in violation of the automatic stay is void and without legal effect. *Schwartz*, 954 F.2d at 571; *Garcia*, 109 B.R. at 339. The only way that a transfer in violation of the stay can be made valid retroactively is by annulling the stay on an appropriate motion. *See* § 362(d); *Schwartz*, 954 F.2d at 572; *Garcia*, 109 B.R. at 340.[4] There is no suggestion in either § 362 or § 549, or for that matter anywhere else in the Bankruptcy Code, that the mere passage of some given statutory period will serve to validate transfers made in violation of the stay. *See also* § 546(a).

---

**4.** Indeed if actions done in violation of the stay were merely voidable, not void, there would be no need to include a provision in § 362(d) authorizing the court to annul the stay. If the transaction were merely voidable, the court could simply validate the transaction by declining to void the transfer. By empowering the

courts to annul the stay, Congress must have been of the view that transactions in violation of the stay were void and that the only way to validate such transfers was to determine retroactively that such transfers were not subject to the stay by annulling the stay. *See Schwartz*, 954 F.2d at 572–573; *Garcia*, 109 B.R. at 340.

Thus, the court holds that the Trustee's action is not time-barred.

## II. Did Sherwin–Williams violate § 362?

■ Section 362(a) automatically stays most efforts to enforce prepetition claims against the debtor personally, the debtor's property, and property of the estate (as defined in § 541) upon the filing of a bankruptcy petition under any Chapter by or against the debtor. *See* § 103(a), 901(a). The most obvious purpose of the automatic stay is to protect the debtor from creditor collection efforts while the debtor attempts to reorganize, to repay debts, or to obtain a discharge of those debts. *Schwartz*, 954 F.2d at 571. However, the stay also protects creditors by preventing the dismemberment of the estate by other creditors seeking to gain an unfair advantage over their peers. *In re BNT Terminals, Inc.*, 125 B.R. 963, 971 (Bankr.N.D.Ill.1990). Accordingly, actions taken in violation of the automatic stay are regarded as void and without effect. *Schwartz*, 954 F.2d at 571; *In re Calder*, 907 F.2d 953, 956 (10th Cir. 1990); *BNT Terminals*, 125 B.R. at 972; *Garcia*, 109 B.R. at 340.

■ The Trustee contends that Sherwin–Williams violated the automatic stay by accepting postpetition payments on prepetition debts from property of the estate. Sherwin–Williams disagrees. Relying on dicta contained in *Garcia*, Sherwin–Williams argues that no violation of § 362 occurs where the debtor initiates a transfer and voluntarily makes a payment to a creditor. Thus, it claims, because the Debtor initiated and voluntarily made all of the postpetition transfers, Sherwin–Williams took no action in violation of the stay.

Unfortunately for Sherwin–Williams, its argument fails. First, the clear language of § 362(a) necessarily leads the court to side with the Trustee. Section 362(a)(3) provides that § 362 operates as a stay of "any act to obtain possession of property

of the estate or of property from the estate or to exercise control over property of the estate." Moreover, § 362(a)(6) provides that § 362 operates as a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."

In this case, it is beyond dispute that Sherwin–Williams took postpetition payments from the Debtor in satisfaction of prepetition debt. In accepting payment from the debtor postpetition on account of a prepetition debt, Sherwin–Williams acted to take possession and control of property of the estate in violation of § 362(a)(3). In applying the payment to prepetition debt, Sherwin–Williams acted to collect a prepetition debt in violation of § 362(a)(6). Thus, Sherwin–Williams' actions were in direct violation of the language of § 362.[5]

Moreover, nothing in either §§ 362(a)(3) or (6) suggests that only coercive, nonvoluntary acts to take property of the estate or collect a prepetition debt are stayed. *See* §§ 362(a)(1), (2) and (8). In *In re BNT Terminals*, 125 B.R. 963, 973 (Bankr. N.D.Ill.1990), the court held that, despite the fact that the debtor made a willing postpetition transfer of funds:

> Permitting [the creditor] to retain these funds as it would have this court do would allow [the creditor] to receive a windfall at the expense of the creditors of this estate and the integrity of the bankruptcy system. This court will not sit idle and permit debtors to waive willy, nilly the automatic stay so that certain creditors may be preferred with impunity and the estate dismembered without reference to the Code.

This court agrees. The automatic stay is meant to prevent one creditor from securing an advantage over its peers after a petition is filed by or against a debtor. *BNT Terminals*, 125 B.R. at 971. It makes no difference whether that creditor gets that advantage as a result of a volun-

---

**5.** There can be no doubt that Sherwin–Williams is an "entity" to which § 362(a) applies. *See* § 101(15). Furthermore, Sherwin–Williams has not attempted to justify its actions under any exception to the application of the automatic stay under § 362(b).

tary or involuntary transfer. If Sherwin–Williams is allowed to keep the postpetition payments it received in this case, it will fare considerably better in this case than its fellow general unsecured creditors. That is exactly the result that § 362 is meant to prevent.[6] Acts done in violation of the stay are void regardless of whether the debtor was pressured into making the payments or whether the creditor who cooperated in making payments knew they were being made in violation of the stay. *BNT Terminals*, 125 B.R. at 972–973. *See also Calder*, 907 F.2d at 956; *In re Smith*, 876 F.2d 524, 526 (6th Cir.1989).[7]

Thus, the court holds that Sherwin–Williams' actions violated the automatic stay.

## CONCLUSION

For the foregoing reason, Sherwin–Williams' motion for summary judgment is denied.

---

6. Arguably, whether Sherwin–Williams acted coercively in trying to collect its prepetition debt or whether the debtor voluntarily paid the debt in question *might* (and in that regard, the court emphasizes the word "might") be relevant in connection with a motion to retroactively validate the transfers by annulling the stay. However, Sherwin–Williams has made no such motion.

7. In so holding, this court recognizes that certain language used in *Garcia* could be read as supporting the approach urged by Sherwin–Williams. In *Garcia*, the court attempted to reconcile its decision that acts in violation of the automatic stay are void in a manner that would not render § 549 a nullity. It did so by focusing on whether the debtor was a "willing participant" to the transfer, stating that:

[c]oncluding that § 549(d) does not limit the period in which a transfer may be challenged as in violation of § 362(a) does not render § 549(d) a nullity, but rather leaves an entire realm of post-petition transfers subject to the time limitations on avoidance contained in § 549(d). These are post-petition transfers in which the debtor is a willing participant, but which, though not prohibited by the automatic stay, are not otherwise authorized by the Bankruptcy Code.
*Garcia*, 109 B.R. at 339.
To the extent that *Garcia* is contrary to this court's holding, this court disagrees with it, choosing instead to agree with the reasoning of *BNT Terminals*.