# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

99-6049MN

_____

| | |
|---|---|
| In re: Kevin Lynn Vierkant;<br>    Darlene Lisa Vierkant | * |
| | * |
| | * |
| Debtors | * |
| | * |
| Dale Alan LaBarge | * |
| | *   Appeal from the United States |
|     Plaintiff - Appellee | *   Bankruptcy Court for the |
| | *   District of Minnesota |
| v. | * |
| | * |
| Kevin Lynn Vierkant; | * |
| Darlene Lisa Vierkant | * |
| | * |
|     Defendants - Appellants | * |

_____

Submitted: October 12, 1999
Filed: November 2, 1999

_____

Before KOGER, Chief Judge, WILLIAM A. HILL and SCHERMER, Bankruptcy Judges.

_____

KOGER, Chief Judge.


Background Facts


On September 9, 1998, Kevin and Darlene Vierkant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. At the time the Vierkants filed their bankruptcy petition, a lawsuit filed by Dale LaBarge alleging retaliatory discharge for filing a workers' compensation claim was pending against them and their corporation, KLV,

Incorporated, in Minnesota state court. The Vierkants never filed an answer to LaBarge's state court complaint. However, the Vierkants did personally appear at a pretrial conference held on July 24, 1998, to inform the state court that KLV, Incorporated had filed for bankruptcy. On August 28, 1998, a hearing was held in the state court lawsuit on LaBarge's motion for the entry of a default judgment. The Vierkants failed to appear at this hearing. On September 14, 1998, after the bankruptcy petition had been filed, the Minnesota state court entered a default judgment against the Vierkants and in favor of LaBarge. The state court expressly concluded that the legal basis for the underlying liability was retaliatory discharge in violation of Minn. Stat. § 176.82 Subd. 1, and awarded damages in the total amount of $62,217.82 to LaBarge.[1]

LaBarge has never moved the bankruptcy court for retroactive relief from the automatic stay in regards to the post-petition entry of the default judgment. The Vierkants have never asserted that the post-petition entry of the default judgment violated the automatic stay.

LaBarge filed an adversary proceeding against the Vierkants contending that the damage award was a nondischargeable debt under 11 U.S.C. § 523(a)(6), and that the default judgment collaterally estopped the Vierkants from contesting the willful and malicious nature of the debt. The bankruptcy court conducted a trial on the adversary complaint during which the state court default judgment was admitted as evidence, and witnesses testified regarding the underlying merits of the nondischargeability action. At the conclusion of trial, the bankruptcy court ruled that the default judgment should be given collateral estoppel effect in the adversary proceeding, and that on the basis of the state court's findings of fact and conclusions of law the debt was nondischargeable under section 523(a)(6). However, the bankruptcy court further stated that no evidence had been introduced at trial to support nondischargeability of the debt under section 523(a)(6), and that in the absence of the default judgment the debt would have been dischargable. The bankruptcy court explained:

---

[1] The Minnesota court awarded damages for lost wages in the amount of $10,000.00; damages for emotional distress in the amount of $10,000.00; punitive damages in the amount of $40,283.82; and costs and attorney's fees in the amount of $1934.00.

However, if I'm wrong on [giving collateral estoppel effect to the default judgment] . . . then I am going to give you the findings that I would have come to had there been no prior state court judgment. I would have without a question determined that Darlene owes no debt to the plaintiff, Mr. LaBarge, and that if she did it would be a dischargeable debt. She – and this would be based on findings that while she was apparently a shareholder and the CEO of the company she had little or nothing to do with the company's activities. She – she was not – it's undisputed she was not informed of what might be going on. She hardly knew that Mr. LaBarge worked for the company and she simply had no facts upon which to act and she did not take any action against him.

And I would also find that the debt to – that Kevin's debt to Mr. LaBarge would be dischargeable because I believe his version which is much better documented than that given here by the plaintiff is the more likely scenario, that there was no retaliatory discharge of this debtor and no willful and malicious injury targeted against this debtor.

That being said, however, because of the findings I make and then I would not obviously be required to go into what the damages might be because I would have determined that whatever the amount of the debt was it was in fact dischargeable. That being said I am going to enter judgment in favor of the plaintiff and against the defendant[s] based on the findings that I have just read into the record which will hold that the debt in the amount awarded in the state court is excepted from discharge under 523(a)(6) because of a collateral estoppel effect of the state court judgment.

Appellants' Appendix, Transcript of Trial at pages 48-49.

The Vierkants timely appeal from the bankruptcy court's order.

## Discussion

The bankruptcy court's decision to apply collateral estoppel is subject to de novo review by the BAP. See Fischer v. Scarborough (In re Scarborough), 171 F.3d 638, 641 (8th Cir. 1999), cert. denied, ___ S. Ct. ___, 1999 WL 700016 (Oct. 12, 1999). Further, the applicability of the automatic stay to a pending matter is an issue of law within the competence of an appellate court. See National Labor Relations Bd. v. Edward Cooper Painting, Inc., 804 F.2d 934, 938 (6th Cir. 1986). Here, we determine that because the default judgment was entered in violation of the automatic stay and, therefore, is void, the

bankruptcy court erred as a matter of law by giving the default judgment collateral estoppel effect in LaBarge's adversary proceeding.

In In re Ahlers, 794 F.2d 388, 394 n.3 (8th Cir. 1986)(citation omitted), the Eighth Circuit opined:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his [or her] creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

The Court continued:

> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

Id. at 394 n.4 (citation omitted).

"The automatic stay is among the most basic of debtor protections under bankruptcy law." Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997). "It is designed to protect debtors from all collection efforts while they attempt to regain their financial footing." Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571 (9th Cir. 1992). "The stay springs into being immediately upon the filing of a bankruptcy petition: '[b]ecause the automatic stay is exactly what the name implies – "automatic" – it operates without the necessity for judicial intervention.'" Soares, 107 F.3d at 975 (citation omitted). The automatic stay "is triggered upon the filing of a bankruptcy petition regardless of whether the other parties to the stayed proceeding are aware that a petition has been filed." Constitution Bank v. Tubbs, 68 F.3d 685, 691 (3d Cir. 1995). "The automatic stay cannot be waived. Relief from the stay can be granted only by the bankruptcy court having

4

jurisdiction over a debtor's case." Id. "In order to secure the[] important protections [of the stay], courts must display a certain rigor in reacting to violations of the automatic stay." Soares, 107 F.3d at 975-76.

In Constitution Bank v. Tubbs, the Third Circuit opined:

> The automatic stay is of broad scope, directing that "[a]ll judicial actions against a debtor seeking recovery on a claim that were or could have been brought before commencement of a bankruptcy case, are automatically stayed." . . . thus, "[o]nce triggered by a debtor's bankruptcy petition, the automatic stay suspends any non-bankruptcy court's authority to continue judicial proceedings then pending against the debtor." . . . Unless relief from the stay is granted, the stay continues until the bankruptcy case is dismissed or closed, or discharge is granted or denied. . . . Once a stay is in effect, without relief from the bankruptcy court, "the parties themselves [can]not validly undertake any judicial action material to the . . . claim against" the debtor.

Constitution Bank v. Tubbs, 68 F.3d at 691-92 (citations omitted).

Section 362(a)(1) provides in relevant part that a bankruptcy petition "operates as a stay, applicable to all entities, of the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor." 11 U.S.C. § 362(a)(1). Here, the post-petition entry of the default judgment was a continuation of a judicial proceeding within the meaning of section 362(a)(1),[2] and constituted a violation of the automatic stay.

---

[2] The post-petition entry of the default judgment was not a ministerial act exempted from the application of the automatic stay. See Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 973-75 (1st Cir. 1997)(The First Circuit stated that "it is readily apparent that the state court's actions in ordering a default and directing the entry of a judgment [post-petition] possess[ed] a distinctly judicial, rather than a ministerial, character," and, consequently, such action violated the automatic stay.). Compare Heikkila v. Carver (In re Carver), 828 F.2d 463, 464 (8th Cir. 1987)(The Eighth Circuit held that the post-petition "ministerial" and "routine" entry of a certification of noncompliance by the court clerk after the expiration of a judicially decreed redemption period in a strict foreclosure action brought against the debtor who had defaulted on a contract for deed did not violate the automatic stay.).

The courts are split on whether actions taken in derogation of the automatic stay are void ab initio or merely voidable.  See, e.g., <u>Carpio v. Smith (In re Carpio)</u>, 213 B.R. 744, 748, 749 (Bankr. W.D. Mo. 1997)(collecting bankruptcy court and district court cases within the Eighth Circuit that have addressed this issue, along with circuit court cases and one United States Supreme Court case).

In <u>Kalb v. Feuerstein</u>, 308 U.S. 433, 60 S. Ct. 343, 84 L. Ed. 370 (1940), the United States Supreme Court, in the context of the Bankruptcy Act of 1898, held that actions taken in violation of the automatic stay are void.  The Supreme Court opined:

> It is generally true that a judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral attack.  But Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception to that principle and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally.  Although the Walworth County Court had general jurisdiction over foreclosures under the law of Wisconsin, a peremptory prohibition by Congress in the exercise of its supreme power over bankruptcy that no State court have jurisdiction over a petitioning farmer-debtor or his property, would have rendered the confirmation of sale and its enforcement beyond the County Court's power and nullities subject to collateral attack.  The States cannot, in the exercise of control over local laws and practice, vest State courts with power to violate the supreme law of the land.  The Constitution grants Congress exclusive power to regulate bankruptcy and under this power Congress can limit that jurisdiction which courts, State or Federal, can exercise over the person and property of a debtor who duly invokes the bankruptcy law.  If Congress has vested in the bankruptcy courts exclusive jurisdiction over farmer-debtors and their property, and has by its Act withdrawn from all other courts all power under any circumstances to maintain and enforce foreclosure proceedings against them, its Act is the supreme law of the land which all courts – State and Federal – must observe.  The wisdom and desirability of an automatic statutory ouster of jurisdiction of all except bankruptcy courts over farmer-debtors and their property were considerations for Congress alone.
> We think the language and broad policy of the Frazier-Lemke Act conclusively demonstrate that Congress intended to, and did deprive the Wisconsin County Court of the power and jurisdiction to continue or maintain

in any manner the foreclosure proceedings against appellants without consent after hearing of the bankruptcy court in which the farmer's petition was then pending.

. . . .

The mortgagees who sought to enforce the mortgage after the petition was duly filed in the bankruptcy court, the Walworth County Court that attempted to grant the mortgagees relief, and the sheriff who enforced the court's judgment, were all acting in violation of the controlling Act of Congress. Because that State court had been deprived of all jurisdiction or power to proceed with the foreclosure, the confirmation of the sale, the execution of the sherif's deed, the writ of assistance, and the ejection of appellants from their property – to the extent based upon the court's actions – were all without authority of law.

Kalb v. Feuerstein, 308 U.S. at 438-40, 443, 60 S. Ct. at 346, 348 (footnotes omitted).

In Potts v. Potts (In re Potts), 142 F.2d 883 (6th Cir. 1944), cert. denied, 324 U.S. 868, 65 S. Ct. 910, 89 L. Ed. 1423 (1945), also a Bankruptcy Act case, the Sixth Circuit, relying on Kalb v. Feuerstein, held that actions in violation of the automatic stay are void. The Sixth Circuit stated:

Upon filing a petition under Chapter XII, all of the property of the debtor is brought within the jurisdiction of the Bankruptcy Court which jurisdiction is paramount and exclusive and thereafter no action taken in any other court can affect the proceedings in the Bankruptcy Court. Since the judgment of the state court of July 26, 1943, is the sole foundation for claimant Potts' second claim, the judgment being void, the claim is void, and likewise, the whole decree of the state court.

Potts, 142 F.2d at 888 (citing Kalb v. Feuerstein, 308 U.S. 433, 443, 60 S. Ct. 343, 84 L. Ed. 370 (1940)).

The circuit courts that have addressed the issue of void ab initio versus merely voidable in the context of the Bankruptcy Code are split. The Fifth Circuit and the Federal Circuit have taken the minority position that an act in violation of the automatic stay is merely voidable. See Bronson v. United States, 46 F.3d 1573 (Fed. Cir. 1995)(2 to 1 decision); Picco v. Global Marine Drilling Co., 900 F.2d 846 (5th Cir. 1990).

The overwhelming majority of the circuits hold that an action in violation of the automatic stay is void ab initio. See Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969 (1st Cir. 1997); Constitution Bank v. Tubbs, 68 F.3d 685 (3d Cir. 1995); Parker v. Bain, 68 F.3d 1131 (9th Cir. 1995); Franklin Sav. Ass'n v. Office of Thrift Supervision, 31 F.3d 1020 (10th Cir. 1994); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522 (2d Cir. 1994); Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.), 749 F.2d 670 (11th Cir. 1984); Matthews v. Rosene, 739 F.2d 249 (7th Cir. 1984).

In the Sixth Circuit two panels have held that actions in violation of the automatic stay are void, Smith v. First America Bank, N.A. (In re Smith), 876 F.2d 524 (6th Cir. 1989); National Labor Relations Bd. v. Edward Cooper Painting, Inc., 804 F.2d 934 (6th Cir. 1986); while one panel has held that acts violating the automatic stay are invalid and voidable, Easley v. Pettibone Michigan Corp., 990 F.2d 905 (6th Cir. 1993).

The Eighth Circuit has not addressed this issue, and in a 1997 opinion expressly declined to do so. See Riley v. United States, 118 F.3d 1220, 1222 n.1 (8th Cir. 1997), cert. denied, 118 S. Ct. 1299, 140 L. Ed. 2d 466 (1998).

The Ninth Circuit Court of Appeals enunciated the following rationale to support its holding that violations of the automatic stay are void:

> In light of the automatic stay's purpose, the issue before us requires some analysis of the relevant policy considerations. Either the debtor must affirmatively challenge creditor violations of the stay, or the violations are void without the need for direct challenge. If violations of the stay are merely voidable, debtors must spend a considerable amount of time and money policing and litigating creditor actions. If violations are void, however, debtors are afforded better protection and can focus their attention on reorganization [or relief].
> Given the important and fundamental purpose of the automatic stay and the broad debtor protections of the Bankruptcy Code, we find that Congress intended violations of the automatic stay to be void rather than voidable. Nothing in the Code or the legislative history suggests that Congress intended to burden a bankruptcy debtor with an obligation to fight off unlawful claims.

8

The position championed by the IRS in this case would impose severe hardships on debtors trying to regain their financial footing.

The district court in In re Garcia, 109 B.R. 335 (N.D. Ill. 1989), explained that if violations of the automatic stay were merely voidable, creditors would be encouraged to violate the stay:

> [T]he fundamental importance of the automatic stay to the purposes sought to be accomplished by the Bankruptcy Code requires that acts in violation of the automatic stay be void, rather than voidable. Concluding that acts in violation of the automatic stay were merely voidable would have the effect of encouraging disrespect for the stay by increasing the possibility that violators of the automatic stay may profit from their disregard for the law, provided it goes undiscovered for a sufficient period of time. This may be an acceptable risk to some creditors when measured against a delayed prorata distribution.

Id. at 340 (footnote omitted). Like the court in Garcia, we will not reward those who violate the automatic stay. The Bankruptcy Code does not burden the debtor with a duty to take additional steps to secure the benefit of the automatic stay. Those taking post-petition collection actions have the burden of obtaining relief from the automatic stay. See In re Williams, 124 B.R. [311,] 317-18 [(Bankr. C.D. Cal. 1991)].

Schwartz v. United States, 954 F.2d 569, 571-72 (9th Cir. 1992). The Schwartz court continued:

> The courts which have found the automatic stay voidable rather than void have relied primarily on sections 362(d) and 549 of the Bankruptcy Code to support their conclusion. . . . These courts have reasoned that (1) the court's power under section 362(d) to annul an automatic stay and (2) the trustee's duty under section 549 to bring an action to void an unauthorized transfer are inconsistent with violations of the stay being void and thus demonstrate that violations of the automatic stay are merely voidable. We find this reasoning erroneous.
>
>           . . . .
>
> [S]ection 362[(d)] gives the bankruptcy court wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay. 2 Collier on Bankruptcy § 362.07 (15th ed. 1984). . . .
>
> [S]ection 362(d) is not inconsistent with the conclusion that any action in violation of the automatic stay is void and of no effect. Section 362(d)

9

outlines the bankruptcy court's authority to make exceptions to the general operation of the stay. If a creditor obtains retroactive relief under section 362(d), there is no violation of the automatic stay, and whether violations of the stay are void or voidable is not at issue.

. . . .

The power to grant relief, even retroactively, simply does not mean that violations of the stay must be merely voidable rather than void. As was explained by the court in In re Garcia, 109 B.R. at 339, "that Congress saw fit to include specific exceptions to the automatic stay does not require the conclusion that actions in violation of the automatic stay are merely voidable." It is entirely consistent to reason that, absent affirmative relief from the bankruptcy court, violations of the stay are void.

Statements from leading authorities on bankruptcy generally support this conclusion: "The use of the word 'annulling' [in § 362(d)] permits the [court's] order to operate retroactively, thus validating actions taken by a party at a time when he was unaware of the stay. *Such actions would otherwise be void*." 2 Collier on Bankruptcy § 362.07 (emphasis added). With that understanding, section 362(d) gives the court the power to ratify retroactively any violation of the automatic stay which would otherwise be void. Simply put, there is nothing remarkable or inconsistent about the normal operation of the automatic stay being subject to a specific statutory exception such as that found in section 362(d). . . .

. . . .

The supposed conflict between section 549 and section 362 can be explained by the following reasoning. First, the expansive definition of "transfer" means that sections 362 and 549, at times, cover the same transactions. Second, section 549 implies that some of these overlapping transactions will be valid unless affirmatively challenged by the trustee. Therefore, some argue that section 362 cannot be interpreted to void these overlapping transactions, for doing so would render section 549 moot. . . . [A] straightforward analysis of section 549 reveals that it is not intended to cover the same type of actions prohibited by the automatic stay nor rendered moot by section 362's voiding of all automatic stay violations. Section 549 applies to unauthorized transfers of estate property which are not otherwise prohibited by the Code. . . . In most circumstances, section 549 applies to transfers in which the debtor is a willing participant. . . . For example, in a transfer unrelated to any antecedent debt, the debtor may sell a portion of the estate's property to a third person. The trustee has the power to avoid such a transfer under section 549.

Section 362's automatic stay does not apply to sales or transfers of property initiated by the debtor. Thus, section 549 has a purpose in

bankruptcy beyond the potential overlap with section 362. In other words, the automatic stay can void any violation and still leave section 549 with a valid and important role in bankruptcy. Section 549 exists as a protection for creditors against unauthorized debtor transfers of estate property. Although there are circumstances where section 362 overlaps section 549 and renders it unnecessary, this overlap falls far short of rendering section 549 meaningless.

Similarly, subsection 549(c)'s protection of good faith purchasers carves out an extremely specific and narrow exception to the automatic stay when section 362 overlaps subsection 549(c). There is no reason to infer from this narrow exception that violations of the automatic stay are not void. . . . It is disingenuous to argue that the general rule must be invalid simply because there is a narrow exception to the rule. If violations of the automatic stay are not void because there is a narrow exception under subsection 549(c), then by the same reasoning the rest of section 549 would be invalid because subsection 549(c) creates an exception to the trustee's power to avoid postpetition transfers.

Indeed, subsection 549(c) sheds no light on the void/voidable distinction. Subsection 549(c) is an exception to section 362 regardless of whether violations of the automatic stay are void or merely voidable. Congress did not draft subsection 549(c) to demonstrate that violations of the automatic stay are merely voidable; Congress drafted subsection 549(c) to protect good faith purchasers where the sale would otherwise be subject to avoidance under section 549 or void under section 362.

Schwartz, 954 F.2d at 572-74 (some citations omitted).


In Soares v. Brockton Credit Union (In re Soares), the First Circuit explained:


[T]he characterization of an infringing action as "void" or "voidable" influences the burden of going forward. Treating an action taken in contravention of the automatic stay as void places the burden of validating the action after the fact squarely on the shoulders of the offending creditor. In contrast, treating an action taken in contravention of the automatic stay as voidable places the burden of challenging the action on the offended debtor. We think that the former paradigm, rather than the latter, best harmonizes with the nature of the automatic stay and the important purposes that it serves.

11

Soares, 107 F.3d at 976.  The First Circuit further opined that in an appropriate case, a bankruptcy court may grant retroactive relief from the automatic stay under section 362(d). Id. at 976-77.  However, retroactive relief should be granted "only sparingly and in compelling circumstances."  Id. at 978.

We are persuaded by the rationales offered by the Schwartz and Soares courts, and align ourselves with the majority position.  We hold that an action taken in violation of the automatic stay is void ab initio.

Here, LaBarge never sought retroactive relief from the automatic stay in the bankruptcy court in an effort to validate the void default judgment.  We rule that as a matter of law, a void default judgment cannot be given collateral estoppel effect in an adversary proceeding seeking the nondischargeability of a debt based upon that default judgment. Accordingly, the bankruptcy court erred by giving the void default judgment collateral estoppel effect in this section 523(a)(6) adversary proceeding.

We reverse  and remand to the bankruptcy court for the entry of an order discharging the debt based upon the bankruptcy court's express findings on the record that but for the collateral estoppel effect of the default judgment the debt would be dischargeable.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL, EIGHTH CIRCUIT

12