In re John Voris WILLIAMS, Jr., Debtor.

No. 00–50332–JWV.

United States Bankruptcy Court, W.D. Missouri, St. Joseph Division.

Jan. 12, 2001.

Stephen G. Bolton, Overland Park, KS, for Debtor.

Steven M. Leigh, Kansas City, MO, for Movant.

## MEMORANDUM OPINION AND ORDER

JERRY W. VENTERS, Bankruptcy Judge.

This matter is before the Court on competing motions filed by Atlantic Mortgage & Investment Corp. ("Atlantic") and John Voris Williams, Jr. ("Debtor" or

"Williams"), the Debtor in these Chapter 13 proceedings, concerning a foreclosure sale conducted by Atlantic on December 28, 2000, of the Debtor's residence property in Parkville, Missouri. The sale was conducted in violation of the automatic stay of 11 U.S.C. § 362.

Atlantic filed a "Motion for Order Validating Foreclosure Sale Conducted December 28, 2000, or, in the Alternative, Motion for Relief" on January 4, 2001, and requested an expedited hearing. The Debtor responded by filing a "Motion for Relief for Violation of Automatic Stay" on January 5, 2001, and also requested an expedited hearing. The Court held a telephone conference with counsel for the parties on January 8, 2001, and counsel agreed to waive all time and notice requirements with respect to the motions and requested that the Court proceed with an expedited hearing on both motions. That hearing was held on January 10, 2001.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G). The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(a).

## FACTUAL BACKGROUND AND FINDINGS

The events that have given rise to the present motions are best set out in chronological order, as developed from a review of the Court's file and the testimony and exhibits received at the hearing on January 10, 2001.[1]

May 2, 2000—The Debtor files his voluntary Chapter 13 Petition and a proposed Chapter 13 Plan.[2]

September 8, 2000—The Missouri Department of Revenue files a Motion to Dismiss the Debtor's Chapter 13 case because of his failure to file 1998 and 1999 state tax returns within the time previously ordered by the Court. (Doc. # 12)

September 12, 2000—Atlantic files a Motion for Relief seeking leave to foreclose on the Debtor's residence at 812 East Street, Parkville, Missouri. (Doc. # 13) The Motion alleges that the Debtor has failed to make his mortgage payments to Atlantic since July 1, 2000, and that the delinquency in payments totals $1,627.26, excluding late fees and other charges.

September 22, 2000—The Debtor files an Objection to Motion for Relief from Stay in which he states that he "is in the process of becoming current on payments on real estate and anticipates funds to become current with his post petition payments." (Doc. # 16) A hearing on the Motion for Relief was set for October 12, 2000.

October 2, 2000—The Chapter 13 Trustee files a Motion to Dismiss, asserting as grounds therefor that the Court denied confirmation of the Debtor's proposed Plan at a hearing on July 11, 2000. (Doc. # 18) The Debtor had not filed an Amended Plan since the entry of the Order Denying Confirmation. A hearing on this Motion to Dismiss was set for October 24, 2000.

October 6, 2000—The Chapter 13 Trustee files a second Motion to Dismiss alleging that the Debtor is in default on his Plan payments in the amount of $760.00 ($190.00 monthly for four months). (Doc. # 19) This Motion was scheduled for hearing on November 28, 2000.

October 12, 2000—No hearing is held on the Motion for Relief filed by Atlantic. Instead, counsel for the parties advise the Court that they have reached agreement on a stipulation to be submitted to the Court at a later time.

1. The Court has taken judicial notice of various pleadings and notices in the Debtor's Chapter 13 file that were not offered or received in evidence at the hearing. The Court may take judicial notice of adjudicative facts, whether requested or not. FED. R. EVID. 201(c).

2. Although Atlantic suggested at the hearing that this was Williams's second or third bankruptcy filing, the petition does not disclose any prior filings and the Court is without any knowledge of any such prior filings.

October 24, 2000—Hearings are held on the Motions to Dismiss filed by the Department of Revenue and the Trustee. At the conclusion of the hearings, the Court announces that it will dismiss the case on the basis of the Trustee's Motion.

October 25, 2000—An Order of Dismissal is entered on the basis of the Trustee's Motion. (Doc. # 21) All creditors and parties in interest are served with a copy of the Order by the Bankruptcy Noticing Center. (Doc. # 22)

November 6, 2000—The Debtor files a Motion to Vacate Order of Dismissal. (Doc. # 23) The Debtor—incorrectly—states that his Chapter 13 was dismissed on October 25, 2000, for his failure to file the 1998 and 1999 tax returns, and states that he has now completed the tax returns and has provided copies to the Department of Revenue and the Trustee. A Certificate of Service signed by Stephen G. Bolton, the Debtor's attorney, states that a copy of the Motion was mailed to Steven M. Leigh, Atlantic's counsel, on November 5, 2000. Also on November 6, 2000, the Debtor files a Motion for Expedited Hearing on Motion to Vacate Order of Dismissal. (Doc. # 24) The Certificate of Service indicates that a copy of this Motion was also mailed to Leigh. Leigh received the Motion for Expedited Hearing but did not receive the Motion to Vacate Order of Dismissal.

November 10, 2000—Berry F. Laws, III, an attorney in Leigh's law firm (Martin, Leigh & Laws, P.C.), mails a letter to Williams advising him that the amount of his debt to Atlantic is $50,912.49 and advising Williams that he has 30 days to dispute the validity of the debt. This letter was written pursuant to the provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § § 1692a–1692o. The letter was sent only to Williams (not to Bolton) at Williams's East Street address in Parkville. (Leigh Ex. 6)

November 14, 2000—The Clerk of the Court issues a Notice setting a telephone conference on the Debtor's Motion to Vacate Order of Dismissal on November 28, 2000. The Bankruptcy Noticing Center served this Notice on Bolton, Leigh, the Trustee, the Debtor, and three creditors' attorneys on November 14, 2000. Leigh did not receive a copy of this Notice.

November 14–16, 2000—Bolton signs the stipulation for settlement of Atlantic's Motion for Relief and mails it to Leigh, with no cover letter or note of explanation. (Leigh Ex. 2) Leigh receives the signed stipulation on November 16, 2000, but does not file it with the Court because the case has been dismissed.

November 20, 2000—Richard L. Martin, the attorney in Leigh's office responsible for the Williams foreclosure file, sends a letter and a Notice of Trustee's Sale to Williams at his East Street address in Parkville, notifying Williams that his property will be sold at foreclosure sale on December 21, 2000. (Leigh Ex. 7) This letter and Notice are sent to Williams by first class mail (i.e., regular mail) and by certified mail, return receipt requested. (Leigh Ex. 8) The certified mail is subsequently returned to Martin, marked "unclaimed" by the Postal Service. (Leigh Ex. 8)

November 28, 2000—The Court enters an Order Vacating Order of Dismissal, no objections or responses to the Debtor's Motion to Vacate having been filed. (Doc. # 26) A copy of the Order was sent to Bolton, the Debtor's attorney, with instructions for Bolton to serve it.

November 30, 2000—Bolton's secretary mails a copy of the Order Vacating Order of Dismissal to Leigh's office. (Bolton Ex. 2) However, the Order is not served on any other creditors, parties in interest, or attorneys of record by Bolton's office. Leigh does not receive the Order from Bolton.

December 28, 2000—Martin, as Successor Trustee, cries the foreclosure of the Debtor's property and the property is purchased for $56,511.00 by Daniel M. Czamanske and Luisa B. Czamanske ("Cza-

manskes").[3] A Trustee's Deed conveying the property to the Czamanskes was executed by Martin on the same day, December 28. (Leigh Ex. 11)

January 3, 2001—A paralegal for Martin, Leigh & Laws forwards the Trustee's Deed to the title insurance company for recording. (Leigh Ex. 13)

January 3, 2001—Martin, Leigh & Laws forwards a check for $55,555.79, representing the payoff of the mortgage debt, to Atlantic in Jacksonville, Florida, by Airborne Express. (Leigh Exs. 14, 15)

January 3, 2001—Martin issues a letter captioned, in capital letters, NOTICE TO VACATE, to Williams at his 812 East Street address and causes the letter to be personally served at that address. (Leigh Ex. 16) Williams is not at home when the letter-notice is served, but a friend is present and receives the letter-notice for Williams.

January 3, 2001—Bolton telephones Martin to inquire as to why the foreclosure sale has occurred, and advises Martin of the Court's November 28, 2000, Order Vacating Order of Dismissal. On this same date, the title insurance company telephones Martin and advises him of the pending bankruptcy proceedings.

January 4, 2001—Atlantic files its Motion for Order Validating Foreclosure Sale Conducted December 28, 2000, or, in the Alternative, Motion for Relief.

January 5, 2001—The Debtor files his Motion for Relief for Violation of Automatic Stay, asking the Court to void the foreclosure sale as having been conducted in violation of the automatic stay of 11 U.S.C. § 362 and asking that the Debtor be allowed to pay his indebtedness to Atlantic pursuant to his Chapter 13 Plan.

January 8, 2001—The Debtor files his Objection to [Atlantic's] Motion for Validation of Foreclosure Sale or Alternative Motion for Relief from Stay.

January 10, 2001—Expedited hearing on all issues conducted by the Court with the consent of the parties.

Additional facts necessary to a resolution of the issues before the Court will be developed in the Discussion portion of this Memorandum Opinion and Order.

## DISCUSSION

There is no dispute that conducting a foreclosure sale of a debtor's property while the debtor is in bankruptcy and under the protection of the Bankruptcy Code is a violation of the automatic stay of 11 U.S.C. § 362(a), unless relief from the stay has been granted prior to the sale being conducted.[4] The difficulty arises when, as in this case, a creditor has taken an action that is in violation of the automatic stay.

There is a sharp split of authority among the courts that have considered the issue as to whether an action taken in violation of the automatic stay is void *ab initio* or is merely voidable. The bankruptcy and circuit courts to address the issue are split, whereas the overwhelming majority of the circuit courts that have considered it have held that actions in

---

**3.** Although the foreclosure sale was advertised for December 21, 2000, it was adjourned for a week, until December 28, 2000, because authority had not been received from the lender for the opening foreclosure bid, Martin explained.

**4.** Subsection (a) of § 362 provides, in pertinent part:
(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—
(1) the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

\*　　\*　　\*　　\*　　\*　　\*

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
11 U.S.C. § 362(a).

violation of the stay are void *ab initio*. For a discussion of this split of authority, see the excellent opinion of the Honorable Frank W. Koger in *In re Vierkant*, 240 B.R. 317, 322–25 (8th Cir. BAP 1999). Either fortunately or unfortunately, depending on one's point of view, the Eighth Circuit Court of Appeals has not addressed the issue, and in a 1997 opinion expressly declined to do so. *See Riley v. United States*, 118 F.3d 1220, 1222 n. 1 (8th Cir.1997), *cert. denied*, 523 U.S. 1020, 118 S.Ct. 1299, 140 L.Ed.2d 466 (1998); *Vierkant*, 240 B.R. at 323. In *Vierkant*, the Bankruptcy Appellate Panel held that an action taken in violation of the automatic stay is void *ab initio*.

■ However, it is the opinion of this Court, as explained in *In re Lett*, 238 B.R. 167, 193–96 (Bankr.W.D.Mo.1999), that actions taken in violation of the automatic stay are voidable, and not void *ab initio*.[5] Moreover, as this Court noted in *Lett*, 238 B.R. at 195, some of the courts that have held that actions taken in violation of the stay were void have nevertheless recognized that there are "equitable exceptions" to that principle and that the supposedly void action can be altered or approved retroactively on equitable grounds. *See, e.g., In re Adams*, 215 B.R. 194, 195 (Bankr.W.D.Mo.1997); 3 Lawrence P. King et al., COLLIER ON BANKRUPTCY ¶ 362.11[1], pp. 362–115, 116 (15th ed. rev.2000). And, finally, subsection (d) of Section 362 grants a bankruptcy court the power to terminate, annul, or modify the automatic stay for cause,[6] thereby providing a mechanism by which a court may grant retroactive relief from the stay. *See*

*In re Major*, 218 B.R. 501, 503 (Bankr. W.D.Mo.1998), and the cases cited therein; 3 Lawrence P. King et al., COLLIER ON BANKRUPTCY ¶ 362.11[1], pp. 362–115–16 (15th ed. rev.2000) ("Although a court may use the annulment power to give retroactive relief from the stay, such relief should be granted sparingly.").

■ In *Lett*, this Court noted some of the compelling circumstances and factors that could be considered in determining whether to grant the "extraordinary relief" of annulment or retroactive voiding of the automatic stay: (1) whether the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay; (2) if the debtor has acted in bad faith; (3) if there was equity in the property of the estate; (4) if the property was necessary for an effective reorganization; (5) if grounds for relief from the stay existed and a motion, if filed, would have been granted prior to the violation; (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; (7) if the creditor has detrimentally changed its position on the basis of the action taken; (8) whether the creditor took some affirmative action post-petition to bring about the violation of the stay; and (9) whether the creditor promptly seeks a retroactive lifting of the stay and approval for the action that has been taken. *Lett*, 238 B.R. at 195–96.

■ Several of these factors are present in the instant case, and the Court's analysis of the evidence in light of these factors impels the Court to the conclusion that the automatic stay should be annulled or ret-

**5.** While the rulings of the Bankruptcy Appellate Panels are entitled to appropriate respect, those rulings are not binding on the Bankruptcy Court. *In re Carrozzella & Richardson*, 255 B.R. 267, 271–73 (Bankr.D.Conn.2000). Until the Eighth Circuit speaks definitively on the subject, this Court will hold to its belief that such actions are voidable, not void *ab initio*.

**6.** Subsection (d) of § 362 provides, in pertinent part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest:
11 U.S.C. § 362(d).

roactively lifted and the foreclosure sale conducted of the Debtor's property on December 28, 2000, should be validated as requested by Atlantic.

First, and perhaps most importantly, the Court does not believe that the Debtor has acted in good faith with respect to his mortgage debt to Atlantic. Although the Chapter 13 Plan filed by the Debtor with his Petition on May 2, 2000, provided that the Debtor would make his post-petition payments directly to Atlantic, the Debtor has not made any payments whatsoever to Atlantic since June 2000. Mortgage payments are now overdue for July–December 2000 and January 2001, a total of seven months. The Debtor has not resumed the mortgage payments despite entering into a stipulation that provided for the regular monthly mortgage payments to resume on November 1, 2000, plus monthly payments on the post-petition arrearage of $480.68 commencing on November 15, 2000, and continuing for six months. Nor has the Debtor filed an Amended Plan or taken other steps to have his original Plan confirmed since the Court denied confirmation of his original Plan on July 11, 2000, over six months ago. And he has not been making his Plan payments for most of that time, as well. In short, it appears that the Debtor is making no attempts whatsoever to obtain confirmation of a Chapter 13 Plan that would provide for payments to Atlantic or to make the mortgage payments as called for in the stipulation which he, through his attorney, entered into with Atlantic in November 2000.[7]

Second, the Court does not believe that the Debtor has acted honestly and in good faith with respect to the foreclosure proceedings. Although Martin, the attorney handling the foreclosure sale, sent the Notice of Trustee's Sale by both regular mail and certified mail on November 20, 2000, the Debtor implied that he did not receive the first-class mailing and claimed that he never received a notice that he had certified mail at the post office.[8] Yet, the Debtor never asserted that he did not receive the Fair Debt Collection Practices Act letter sent to him, at the very same address, by Berry Laws on November 10, 2000, just ten days earlier. Nor did he testify that he was having any other troubles in receiving his mail on a timely basis. The Court believes that the Debtor received the first-class letter and Notice of Trustee's Sale, but chose to ignore it and keep quiet about it for whatever advantage he might thereby gain.

Third, the Court believes that Leigh and Martin, as attorneys for Atlantic, acted in a good faith belief that the bankruptcy proceeding had been dismissed, and that Atlantic was therefore free of the automatic stay and could proceed with foreclosure. Leigh's paralegal testified that, although Leigh received a copy of Bolton's Motion asking for an expedited hearing on the Debtor's Motion to Vacate Order of Dismissal, which was filed on November 6, 2000, Leigh did not receive a copy of the Motion to Vacate Order of Dismissal. Of much greater importance, Leigh did not receive a copy of the Court's November 28, 2000, Order setting aside the earlier dismissal and reinstating the Chapter 13 case, although Bolton's secretary testified that she had mailed it to Leigh on November 30, 2000.[9] The Court is not entirely con-

---

**7.** The Chapter 13 Plan filed in May provided for payment of a pre-petition arrearage of $3,800.00 through the Plan. Combined, the pre-petition arrearage and the post-petition arrearage now appear to be in excess of $7,000.00, which exceeds 12% of the scheduled value of the property.

**8.** The Debtor's response to the Court's inquiry as to whether he had received the November 20, 2000, first-class mailing containing Martin's letter and the Notice of Trustee's Sale

was somewhat evasive. Hesitantly, the Debtor said, "I may have [received it]. I cannot find it in my records right now."

**9.** Perhaps this is the appropriate place to note that Bolton did not call either his secretary or the Debtor to the stand. Instead, Bolton made a statement himself of what he considered the pertinent facts, and offered an affidavit signed by his secretary. The Court then required both the secretary and the Debtor to take the stand and answer questions posed by

vinced that Bolton mailed the Order Vacating Order of Dismissal to Leigh, particularly in view of the facts that (a) Bolton never served any other party or creditor with a copy of the Order, as he was instructed to do, and (b) Bolton never filed a certificate of service with the Court to certify that he had served the Order on Leigh or anyone else. Knowing that Atlantic had previously filed a Motion for Relief and knowing that the Debtor was seriously delinquent in his mortgage payments, Bolton should have realized that it was critical that Leigh receive notice of the reinstatement of the bankruptcy case and should have taken every reasonable step to insure that he received that notice. However, Bolton never faxed the Court's Order to Leigh (which would have provided a means of verifying that Leigh had received it) and never telephoned Leigh to advise him of the entry of the Order. At the same time, the Court is concerned that Leigh also did not receive the Court's Notice of November 14, 2000, setting the hearing on the Motion to Vacate Order of Dismissal for November 28, 2000. There were thus three critical mailings in this case that Leigh did not receive, which causes the Court to wonder if there are problems with Leigh's mail service or with the handling and proper routing of mail once it reaches his office. In any event, however, there is no evidence to suggest that Leigh and Martin knew about the reinstatement of the case or that they acted in less than good faith in proceeding with the foreclosure sale. The Court believes Leigh and Martin when they state that they would not have proceeded with the foreclosure sale had they known of the reinstatement and the Court's November 28, 2000, Order; both are experienced attorneys who are knowledgeable concerning the effect of the automatic stay.

Fourth, it appears that there is no equity in the residential property and that it is not necessary to an effective reorganization of the Debtor's financial affairs. 11

U.S.C. § 362(d)(2). The Debtor valued the property in his bankruptcy schedules at $54,000.00, and the amount of mortgage debt against the property at the time of the foreclosure (excluding property taxes) was $55,555.79 (the amount necessary to pay Atlantic's mortgage in full (Leigh Ex. 15)). Therefore, there was no equity in the property. And, not only is the property not necessary to a reorganization of the Debtor's financial affairs, it appears that retention of the property would likely be inimical to a viable reorganization. If the Court's understanding is correct, the regular monthly mortgage payments for the residence are between $800.00 and $900.00 a month. The stipulation entered into by the parties called for payments of $480.68 to catch up the arrearages (which, incidentally, have increased significantly since the stipulation was signed in November). If the Debtor were required to make payments of between $1,200.00 and $1,400.00 a month to Atlantic, it would be highly doubtful that he would be able to make the Plan payments of just $190.00 a month, especially when he has not made them for the last six months, during a time he has been paying absolutely nothing to Atlantic. The Debtor, a single man, could rent adequate housing for less than half what he would be required to pay Atlantic, and that would give him a much better chance of successfully completing his Plan.

Fifth, as is clear from the foregoing discussion, grounds existed for granting relief from the stay, and it is likely the Court would have granted relief had it been requested prior to the violation, given the Debtor's failure to make any mortgage payments whatsoever since June 2000. Additionally, Atlantic would have been entitled to relief from the stay under the terms of the stipulation entered into by the parties in November; that agreement (Leigh Ex. 2) provided for an automatic lifting of the stay if the Debtor defaulted on the required payments and failed to cure that default within ten days after

the Court. Bolton's trial strategy in this respect is curious.

receiving notice of default. In fact, under the express terms of the stipulation, Atlantic is entitled to relief from the stay now because of the Debtor's default.

Sixth, Atlantic has acted promptly to seek relief from the automatic stay, upon learning of its violation of the stay. Atlantic's attorneys became aware of the apparent violation on January 3, 2001, and they filed their Motion to validate the foreclosure sale or lift the stay retroactively on January 4, 2001, the very next day. Atlantic has thus sought a prompt resolution of this matter.

Lastly, Atlantic has detrimentally changed its position on the basis of the action taken, and a failure to grant retroactive relief would result in harm not only to Atlantic but to the Czamanskes, who purchased the property at the foreclosure sale. Atlantic, through the Successor Trustee, has delivered a Trustee's Deed to the property to the Czamanskes and has thereby conveyed title of the property to them. Atlantic could well be subject to legal action brought by the Czamanskes if the sale is not approved. Furthermore, the Czamanskes—the truly innocent parties in all of this—would be damaged because they have paid the property taxes on the property ($850.28) and have obtained insurance on it. They would be deprived of property, to their obvious detriment, that they have purchased in good faith.

■ The Court recognizes that the automatic stay is at the very heart of the protections that are extended to debtors when they file bankruptcy, and that violations of the automatic stay are not to be lightly regarded or routinely condoned. However, this is one of those unusual cases where exceptional circumstances exist and where it would be equitable and appropriate to annul the stay, grant retroactive relief to the creditor, and validate the foreclosure sale. For all the reasons discussed hereinabove, the Court will grant Atlantic the relief it has requested and will deny the Debtor's request that the sale be declared void. Atlantic's oral request for an allowance of attorneys' fees and other expenses will be denied, inasmuch as that request was contingent on the Court's denial of Atlantic's request for relief.

Therefore, it is

**ORDERED** that the automatic stay of 11 U.S.C. § 362 be and is hereby annulled to the extent that Atlantic Mortgage & Investment Corp., is granted the relief requested in its "Motion for Order Validating Foreclosure Sale Conducted December 28, 2000, or, in the Alternative, Motion for Relief," and the foreclosure sale conducted by the Successor Trustee on December 28, 2000, is hereby validated. It is

**FURTHER ORDERED** that the Debtor's "Motion for Relief for Violation of Automatic Stay" be and is hereby denied. It is

**FURTHER ORDERED** that Atlantic's oral request for an award of attorneys' fees and other costs and expenses be and is hereby denied.

**SO ORDERED.**