**In re Marianne Marie CHILDERS, Debtor.**

**McAdams, Inc., Plaintiff,**

**v.**

**Marianne Marie Childers, Defendant.**

**Bankruptcy No. 00–25370–SVK. Adversary No. 03–2408.**

United States Bankruptcy Court, E.D. Wisconsin.

June 18, 2004.

Michael T. Schoendorf, Milwaukee, WI, for Creditor.

Michael J. Watton, Milwaukee, WI, for Debtor.

## MEMORANDUM DECISION

SUSAN V. KELLEY, Bankruptcy Judge.

In *Mega Marts, Inc. v. Trevisan (In re Trevisan)*, 300 B.R. 708 (Bankr.E.D.Wis. 2003), this court denied a motion for default judgment in a nondischargeability action arising out of the debtor's presentation of NSF checks to two grocery stores. The court held that neither the debtor's default on a state court small claims action involving the bad checks nor the debtor's failure to respond to the nondischargeability complaint entitled the plaintiff grocery stores to a judgment on the merits. *Id.* at 716. In order to prevail, the plaintiffs were required to present a *prima facie* case of fraud under § 523(a)(2)(A) of the Bankruptcy Code. *Id.* The plaintiff in this case, McAdams, Inc. d/b/a Pick 'N Save grocery store ("Pick 'N Save"), seeks a default judgment for the presentation of NSF checks, and distinguishes *Trevisan* based on language in the complaint. Although Pick 'N Save has not presented any more evidence than the plaintiffs in *Trevisan*, Pick 'N Save contends that the unanswered allegations here provide the *prima facie* case lacking in *Trevisan*.

## FACTS

On April 8, 2000, Marianne Childers (the "Debtor") presented two checks at her local Pick 'N Save store: check number 1061 in the amount of $100.75, and check number 1062 in the amount of $36.43. The checks were not honored by the Debtor's bank, and eventually were returned to Pick 'N Save for insufficient funds stamped: "Presented Twice Do Not Present Again." On April 28, 2000, Pick 'N Save sent notices to the Debtor by certified mail. The notices added $25 per check in handling/bank charges, made demand for the total due within thirty days, and stated: "You should be aware that the provisions of Wisconsin Statute Section 943.245 allows us to sue you for *THREE* times the amount of the check *PLUS THREE* times the handling/bank charge(s) *PLUS* attorney's fees and court costs." (emphasis in original).

On June 22, 2000, Pick 'N Save filed a small claims action against the Debtor in the Circuit Court for Waukesha County, Wisconsin, seeking $953.37, consisting of the face amount of the checks, $25 per check in bank/handling charges, triple damages of $561.54 and attorney's fees of $204.65. According to the docket report, the complaint was amended twice, with the final return date set for August 21, 2000. No answer was filed, and a default/uncontested judgment was entered on August 22, 2000, in the total amount of $1,034.37. The additional $81 consisted of the small claims filing fee and a $20 service fee.

On June 7, 2000, the Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code. Although Pick 'N Save is not listed as a creditor in the original bankruptcy schedules, Pick 'N Save filed a proof of claim for $1,067 on December 11, 2000. On May 9, 2003, the Debtor moved to convert her case from Chapter 13 to Chapter 7 of the Bankruptcy Code. On August 8, 2003, Pick 'N Save filed an adversary complaint seeking to have its claim of $1,306.52 declared nondischargeable under Bankruptcy Code § 523(a)(2)(A). The Debtor did not answer the complaint, and Pick 'N Save sought a default judgment. After the court decided *Trevisan*, Pick 'N Save amended its complaint to attempt to state a *prima facie* case for nondischargeability. The Debtor did not respond to the amended complaint, and Pick 'N Save renewed its motion for default judgment. Pick 'N Save never filed a motion to modify or annul the automatic stay, and the Debtor never raised any defense that the small

claims action was filed in violation of the stay.

## DISCUSSION

**1. The small claims action violated the automatic stay; as such the judgment entered in that case was void.**

The automatic stay is one of the fundamental debtor protections provided by the Bankruptcy Code. The stay stops creditors from filing or continuing lawsuits against the debtor. Acts done in violation of the stay are void. *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 976 (1st Cir.1997).[1] The Seventh Circuit Court of Appeals has stated: "Orders issued in violation of the automatic stay provisions of the bankruptcy code, see 11 U.S.C. § 362 (1978), ordinarily are void." *Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir.1984).

In *In re Vierkant*, 240 B.R. 317 (8th Cir. BAP 1999), the Bankruptcy Appellate Panel reversed the decision of a bankruptcy court that granted collateral estoppel effect to a default judgment taken in violation of the stay. *Vierkant* is similar to the instant case in that a state court default judgment was entered after a bankruptcy petition, and the creditor filed a complaint to have the debt determined nondischargeable in bankruptcy. The creditor did not seek to have the stay retroactively modified, nor did the debtors assert that the post-petition entry of the default judgment violated the stay. *Vierkant* noted that the automatic stay is triggered upon the filing of the bankruptcy petition, regardless of whether the creditor is aware that the petition has been filed, and held that the

default judgment could not be given collateral estoppel effect. *Id.* at 320, 325.

In this case, presumably Pick 'N Save was not aware of the Debtor's chapter 13 petition when the small claims action was filed. Subsequently, Pick 'N Save learned of the bankruptcy case, and filed a proof of claim. Since the small claims action was filed after the bankruptcy petition, the default judgment entered in the small claims action is void, and this Court will not give that judgment preclusive effect.

**2. The small claims judgment, as a default judgment, is not entitled to preclusive effect.**

Even if the small claims action had not violated the stay, the small claims judgment against the Debtor was a default judgment. As such it was not "actually litigated," which is necessary to apply the doctrine of issue preclusion (formerly called collateral estoppel) to a determination of fraud for purposes of a discharge or nondischargeability action. *Trevisan*, 300 B.R. at 715–716. *See also Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir.1994); *Klingman v. Levinson*, 831 F.2d 1292, 1294–95 (7th Cir.1987); *Molldrem v. Wagner (In re Wagner)*, 79 B.R. 1016, 1019–20 (Bankr.W.D.Wis.1987) (for collateral estoppel to apply under Wisconsin law, the issue must have been actually litigated and necessarily determined in a prior action); *Heggy v. Grutzner*, 156 Wis.2d 186, 193–94, 456 N.W.2d 845, 848–49 (Wis.Ct.App. 1990) (recognizing as a general rule that issue preclusion does not apply to default judgments).

Since this Court is not bound by the small claims default judgment, the is-

---

1. Although a minority of courts have stated that actions in violation of the stay are "voidable," this term is only used because in limited circumstances, not present here, the stay

may be annulled retroactively by the bankruptcy court. *See, e.g., In re Siciliano*, 13 F.3d 748, 751 (3d Cir.1994); *In re Benalcazar*, 283 B.R. 514, 521 (Bankr.N.D.Ill.2002).

sue is whether Pick 'N Save has proven a *prima facie* case of nondischargeability. In deciding, the court must bear in mind that to further the policy of providing a debtor a fresh start in bankruptcy, "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor." *In re Scarlata,* 979 F.2d 521, 524 (7th Cir.1992) (quoting *In re Zarzynski,* 771 F.2d 304, 306 (7th Cir. 1985)). *Accord In re Morris,* 223 F.3d 548, 552 (7th Cir.2000); *In re Reines,* 142 F.3d 970, 972–73 (7th Cir.1998), *cert. denied,* 525 U.S. 1068, 119 S.Ct. 797, 142 L.Ed.2d 659 (1999). Does Pick 'N Save's amended complaint and motion for default judgment survive this scrutiny?

### 3. Plaintiff has not shown a prima facie case of fraud or false representation.

The starting point is the applicable statute. Bankruptcy Code § 523(a)(2)(A) provides in pertinent part:

> (a) A discharge ... does not discharge an individual debtor from any debt ... (2) for money, property, services ... to the extent obtained by... (A) false pretenses, a false representation, or actual fraud ...

11 U.S.C. § 523(a)(2)(A) (2004). *Trevisan* established that presentation of NSF checks alone does not rise to the level of false representation required to except a debt from discharge, since, under Supreme Court and Seventh Circuit Court of Appeals precedent, presentation of a check is neither an express nor implied representation that the check is good. *Williams v. U.S.,* 458 U.S. 279, 285–86, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982); *In re Scarlata,* 979 F.2d 521, 525 (7th Cir.1992); *U.S. v. Doherty,* 969 F.2d 425, 427 (7th Cir.1992). As stated in *In re Pokrandt,* "The fact that a debtor knowingly issues an NSF check does not establish a misrepresentation." 54 B.R. 691, 692 (Bankr.W.D.Wis.1985).

Relying on ample authority, *Trevisan* held that in an NSF check case, the plaintiff must prove that the debtor made an express representation that the check was good, other than the issued check itself. *Trevisan,* 300 B.R. at 717 (quoting *In re Hunter,* 83 B.R. 803, 804 (M.D.Fla.1988); *In re Horwitz,* 100 B.R. 395, 399–400 (Bankr.N.D.Ill.1989)). *See also Kline's Service Center, Inc. v. Fitzgerald (In re Fitzgerald),* 109 B.R. 893, 899–900 (Bankr. N.D.Ind.1989) (it is incumbent on plaintiff to show debtor committed separate and distinct fraud in conjunction with issuance of NSF check before debt can be determined to be nondischargeable); *Union Nat'l Bank & Trust Co. v. Guest (In re Guest),* 193 B.R. 745, 748 (Bankr.E.D.Pa. 1996) (creditor must establish that debtor made a representation that there were sufficient funds available to cover the dishonored check).

Pick 'N Save's amended complaint alleges: "At the time the checks that are referred to herein were presented to the Plaintiff for payment, the Defendant not only knew that there were insufficient funds in the accounts upon which said checks were drawn, but she also further knew that the Plaintiff's cashier would have not allowed the Defendant to use said checks for payment, and that by failing to disclose that material information the Defendant's actions resulted in the Defendant being allowed to pass through the Plaintiff's check-out lane under false pretenses." The first allegation, that Defendant knew that there were insufficient funds in her account and presented the checks anyway, does not constitute fraudulent conduct under § 523(a)(2)(A). The same allegation was made and rejected in *Trevisan.*

### 4. Plaintiff has not presented a prima facie case of false pretenses.

■ The second allegation is new: that the Debtor knew that the cashier would

not have accepted her NSF checks, and that this awareness coupled with the Debtor's failure to disclose that the account did not contain sufficient funds to cover the checks, constituted false pretenses. With this allegation, Pick 'N Save has attempted to fall within the holding of *Check Control, Inc. v. Anderson (In re Anderson),* 181 B.R. 943 (Bankr.D.Minn.1995), a case cited in *Trevisan.* However, the facts in *Check Control* bear almost no resemblance to this case.

The plaintiff in *Check Control* succeeded in a nondischargeability action involving NSF checks. At trial, the evidence showed that Anderson had accumulated losses at a casino in excess of $11,000, when he met with his banker on August 30, 1993, and "admitted that he had written 'about $6,000 in bad checks' to the casino over the weekend." *Id.* at 946. The banker told Anderson that the checks would be returned to the casino, and suggested that Anderson try to make amends with the casino on his own. According to the court:

> At this point, the Defendant intended to continue gambling and was still counting on reversing his fortunes to the point that he could cover the outstanding checks. For the next week, he continued to pass checks at the casino. Over the two weeks in question, he wrote 59 checks to the casino, for face amounts that totalled $11,600. The Bank dishonored all of these checks when they were presented for payment between August 31 and September 9, 1993.

*Id.* at 947.

In *Check Control,* the plaintiff presented *evidence* that the debtor knew that his account was overdrawn and his checks to the casino would not clear, but he nevertheless presented more checks. The plaintiff established that the debtor had spoken to his banker about covering the checks; the banker declined; and the debtor proceeded to issue the checks anyway. After considering that evidence, the court in *Check Control* determined that the debtor's conduct constituted false pretenses under Bankruptcy Code § 523(a)(2)(A):

> [W]here the debtor has possession of material information that may bear on the creditor's willingness to extend a financial accommodation to him; knows that the creditor would consider it; fails to disclose it; creates or allows the creation of the semblance of a very different state of affairs; and reinforces that imposture by the withholding of the material information, the debtor has acted in a way to trigger § 523(a)(2)(A).

*Id.* at 951.

Taking a page from the *Check Control* book, Pick 'N Save alleges in its amended complaint that the Debtor knew that she did not have funds in her account to cover the checks, knew that the Pick 'N Save cashier would not have accepted the checks, and withheld the true facts from the cashier, thereby creating the same false pretenses as Anderson did. Ignoring for the sake of argument the difference in scale between the alleged false pretenses in the cases (2 checks versus 59 checks) and Seventh Circuit authority to the contrary,[2] a major problem with Pick 'N Save's reliance on *Check Control,* is that Pick 'N Save's allegations are totally unsupported by any evidence. There was no trial (either in state court or this court), no

---

**2.** The Minnesota bankruptcy court in *Check Control* was not bound by *Scarlata,* in which our Circuit Court of Appeals held that presen-

tation of an NSF check did not constitute false pretenses under § 523(a)(2)(A). 979 F.2d at 524–25.

deposition testimony, no transcript of a § 341 or Rule 2004 examination and no interrogatory responses. There is simply not a shred of evidence to support the allegations of the amended complaint.

Pick 'N Save has not even provided an affidavit, declaration or any testimony from its own cashier that the store does not accept NSF checks. In fact, construing the notices attached to the small claims complaint in a light favorable to the Debtor, compels the conclusion that Pick 'N Save does accept NSF checks, but adds bank/handling charges to collect them. There is no evidence that the Debtor knew that the account did not contain the $137 to cover the checks. There is no evidence, as in *Check Control*, that the Debtor talked to her banker and knew that the bank would not honor the checks. There is no evidence that the Debtor knew that Pick 'N Save allegedly would not take the checks if the account did not contain sufficient funds. There is no evidence that the Debtor made any representations to Pick 'N Save concerning the checks or her account. There is no evidence that the Debtor presented the checks with no intent to make them good. In short, there is no evidence that the Debtor "committed separate and distinct fraud in conjunction with the issuance of the check," to sustain Pick 'N Save's case. *Fitzgerald*, 109 B.R. at 900.

Absent an affidavit or declaration from the cashier (or someone else who was present) that the Debtor made representations that the checks were good (other than by simply presenting the checks), or some other evidence of the Debtor's fraudulent conduct (such as testimony of a banker or the Debtor herself), Pick 'N Save has not shown a *prima facie* case of fraud, misrepresentation or false pretenses under § 523(a)(2)(A). As in *Trevisan*, the unsupported conclusory allegations of counsel in a complaint, cannot meet the burden of proof required to find this debt nondischargeable. "Mere conclusory averments in a complaint will not suffice to deprive a debtor of its discharge. Debtor's pleaded inability to pay the debt should not be confused with the need to show intent to defraud Plaintiff." *New Austin Roosevelt Currency Exchange v. Sanchez (In re Sanchez)*, 277 B.R. 904, 909 (Bankr.N.D.Ill. 2002).

## CONCLUSION

Whether under this court's decision in *Trevisan* or *Check Control*, Plaintiff is required to produce some evidence that the Debtor committed fraudulent conduct. The presentation of an NSF check, even with knowledge that funds are not available in the account to cover the check, without more, does not constitute a *prima facie* case of fraud, misrepresentation or false pretenses sufficient for nondischargeability under § 523(a)(2)(A) of the Bankruptcy Code. Default judgments from the state courts are not entitled to preclusive effect, and judgments taken in violation of the automatic stay are void. Unsupported allegations in the complaint do not rise to the level of proof needed. The fact that the Debtor can't pay is not the same as proof that the Debtor never intended to pay. Any doubts are to be resolved in favor of the debtor's fresh start. An Order will be entered denying Pick 'N Save's motion for default judgment and dismissing the complaint in this case.